**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Telephone: 602.262.5311

**Susan M. Freeman** (State Bar No. 004199 )
 Direct Telephone: 602.262.5756
 Direct Facsimile:  602-734-3824
 Email:  sfreeman@lrrc.com

**Robert M. Charles, Jr.** (State Bar No. 007359)
 Direct Telephone:  520.629.4427
 Direct Facsimile:  520.879-4705
 Email:  rcharles@lrrc.com

*Attorneys for SCM Specialty Finance Opportunities Fund, L.P.*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

In re:

GV HOSPITAL MANAGEMENT, LLC,

Debtor.

Chapter 11 Case

Case No. 4:17-bk-03351-SHG

**SCM'S RESPONSE TO PROPOSED INTERIM DIP FINANCING ORDER REGARDING SCM'S CASH COLLATERAL**

Date: April 6, 2017
Time: 3:00 p.m.

SCM Specialty Finance Opportunities Fund, L.P. ("SCM") responds to the Emergency *Ex Parte* Motion for Order (1) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; (2) Granting Liens and Superpriority Claims Pursuant to 11 U.S.C. § 364; (3) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (4) Scheduling a Final Hearing; and (5) Granting Related Relief (the "DIP Financing Motion"), as follows.

**1.  SCM's Secured Prepetition Financing**

SCM is the Prepetition Senior Lien Lender (in the words of the DIP Financing Motion) that has provided accounts receivable financing secured by:

 (i) all of the Borrower's present and future Accounts, including all Related
Property of the Accounts and all contracts, Documents, Instruments, and Chattel Paper
relating to or arising out of any of the foregoing;

 (ii) all of Borrower's deposit accounts, including the Governmental Lockbox
Account;

(iii) all Books and Records; and

(iv) any and all additions to or substitutions for any of the foregoing, and any and all replacements and proceeds (including insurance proceeds) of any of the foregoing. (Credit Agreement § 2.9).[1]

SCM also provided a $4 million term loan, likewise secured by (i), (iii) and (iv) and also by Green Valley Hospital, LLC's proceeds of a loan from Green Valley Medical Investments, LLLP (GVMI) and funds deposited into a construction account and segregated loan account (which have been exhausted or used, under Term Loan Agreement amendments, to reduce the Term Loan principal). (Term Loan Agreement § 2.9). The term loan has been paid down to approximately $691,000. The current amount of the SCM Prepetition Senior Lien indebtedness, encompassing the term loan and revolving loan is approximately $2,087,000. The DIP Financing budget contemplates payment of $1,189,868 to pay the SCM Prepetition Senior Lien indebtedness, which must be increased to the full amount due in order to release SCM's liens. (DE 7 at 244) Debtors Green Valley Hospital, LLC and GV Hospital Management, LLC are jointly and severally liable to SCM on both loans (Credit Agreement § 3.7, Term Loan Agreement 2nd Amendment § 3).

All Collateral is deposited into Lockbox Accounts, and held in trust for the benefit of SCM (see DE 016, the Lockbox Motion; Credit Agreement § 2.5). Prepetition, the Collateral was swept daily into a SCM Concentration Account, and SCM re-advanced funds pursuant to the agreed formulas. Credit Agreement §§ 2.1, 2.5 The Lockbox Account funds were swept automatically on the morning of April 4, 2017. SCM arranged for such funds be returned to the Lockbox Accounts on the same day.

The Applicable Rate of interest on the revolving loan upon the Event of Default in the form of the Debtors' bankruptcy filings is the Prime Rate plus 3.5% plus an additional Default Rate of 5% (Credit Agreement §§ 2.3, 3.6). The Debtors pay a monthly Unused Line Fee and Collateral Management (aka Account Monitoring) Fee that are determined by application of formulas to outstanding balances (Credit Agreement §§ 3.2, 3.3). The Credit Agreement also provides for an Early

---

[1] The Credit Agreement and First Amendment are Exhibits 1, 2 hereto. The Term Loan Agreement is Exhibit 3, and the First, Second, Third and Fourth Amendments to it are Exhibits 4-7. The Commercial and Government Lockbox Account Control Agreements are Exhibits 8-9, and the UCC financing statements are Exhibits 10-11.

Termination Fee (Credit Agreement § 3.4). Interest on the term loan is charged at 1.33% per month plus a 5% Default Rate. (Term Loan Agreement §§ 2.3, 3.2). The Term Loan interest payments are made by an advance on the revolving facility, added to the Credit Agreement Obligations on the first day of each month. (Term Loan Agreement § 2.3A, added by the 4th Amendment to Term Loan Agreement).

Section 13.3 of both the Credit Agreement and Term Loan Agreement provides that in the event any payment received by SCM is invalidated or required to be repaid on account of a bankruptcy or avoidance action or otherwise, the Obligations intended to be repaid revive and continue as if the payment had not been received. And Section 13.4 of both agreements requires the Debtors to indemnify SCM and its affiliates and agents from any liability, losses, litigation, costs and expenses (very broadly defined) in any way related to the Debtors' transactions with SCM with limited exceptions.

SCM's security interests are fully documented and perfected, including through UCC filings and control agreements for the Commercial and Government Lockbox Accounts. (See Exhibits 8-12). SCM never obtained a control agreement for the Selfpay Lockbox Account, which receives minimal funds that are not included in the borrowing base.

**2.    SCM Is Entitled to Adequate Protection for Use of its Cash Collateral**

The accounts receivable collateralizing SCM's claims are quintessential cash collateral, and SCM is entitled to adequate protection for the Debtors' use of that cash collateral. 11 U.S.C. § 363(e). Prepetition accounts receivable require serious collection efforts to retain their value, and SCM has no assurance that will happen on a sustained basis. If current lockbox accounts are not maintained, and not swept into SCM's account, accounting for the nuances of various types of accounts – Medicare, Medicaid, Medicare HMO, Commercial Insurance, and Private Insurance with their different payment rates (e.g. Medicare pays 21¢ on every $1 of receivable, while Medicaid pays 14¢ and Medicare HMOs pay 19¢) becomes very challenging.

If the DIP Financing pays the SCM Prepetition Senior Lien in full on the Effective Date (defined as the date the Interim DIP Financing order is entered), SCM's risk of declining collateral is minimal. But if the payment date is delayed, then SCM is at a significant risk, because the DIP Financing lender would advance $450,000 plus Lender Advances, and enjoy a super-priority administrative expense claim, preventing SCM from protections it is entitled to receive under 11 U.S.C. § 507(b), while its

collateral value goes down while Arizona temperatures go up and winter visitor population goes down. SCM's collateral position would deteriorate even further because it would no longer be advancing on a formula of 85% of eligible receivables less interest, fees and costs. That means its interest and costs would not be paid on a regular basis and it would lose its bargained-for protection of maintenance of a near-15% cushion. And SCM's security interest in proceeds of its collateral will become attenuated as the funds are used, and its security interest in other collateral is terminated by 11 U.S.C. § 552(b).

SCM is entitled to preservation of the value of its secured position, and requests adequate protection for that purpose. 11 U.S.C. §§ 361(1), 363(e), 507(b); *In re Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988). A simple replacement lien is not enough, because the Debtors' revenues typically decrease significantly during the summer months. In 2016, SCM's collateral base declined from approximately $10 million in March to $6.5 million in July and $5.6 million in October, before the amounts began increasing again.

### 3. Adequate Protection for SCM

The Debtors need to use SCM's cash collateral to operate. SCM is willing to allow that use, on terms providing it with adequate protection. Specifically, until SCM is irrevocably paid in full, pursuant to a final order of this Court,

(a) SCM is granted replacement liens, co-extensive with the liens SCM held in the Debtors' assets, with the same validity, priority and extent of SCM's prepetition liens, without any further action needed to perfect such liens, to the extent of diminution in collateral value from the petition date.

(b) The existing Lockbox Accounts will be maintained, all of SCM's prepetition and postpetition collateral will be deposited into those Lockbox Accounts, and all funds deposited into those accounts will continue the current practice of being swept daily into an SCM consolidated account, where SCM will continue to account for the funds as it has to date. However, in light of SCM never having obtained a control agreement for the small Selfpay Lockbox, the funds of which are not included in the prepetition borrowing base, collections in the Selfpay Lockbox that are received by SCM will be transferred weekly to the Debtors.

(c) SCM will allow the Debtors to use the cash collateral it receives, with the oldest funds collected used first, applying the same formula that the parties previously used for SCM revolving loan

advances, with the exception that interest will be calculated and deducted weekly instead of once a month, given the expectation that DIP Financing funds will pay SCM's Prepetition Senior Lien in full in less than a month.

(d) Utilizing the status quo formula to determine the amount of cash collateral that the Debtors can use will enable SCM to recover interest and fees on a current basis, which is an important element of its adequate protection. Now that the Debtors are in default, an additional 5% of interest will accrue, and SCM's fees will increase by its reasonable attorneys' fees and costs incurred (current estimate, $7,500). Any Collateral received and not re-used by the Debtors will be applied to the SCM Prepetition Senior Lien claim in accordance with the terms thereof.

(e) The Debtors will continue to comply with all reporting and information-sharing requirements of the Credit Agreement and Term Loan Agreement, and all other terms not inconsistent with the cash collateral order approving SCM's adequate protection.

(f) SCM will hold a super-priority claim under 11 U.S.C. § 507(b) that is not subordinated to DIP Financing or other parties' liens or claims.

(g) SCM's consent to utilization of its cash collateral on these terms will expire the earlier of (i) the date on which SCM's Prepetition Senior Lien claim is paid in full, irrevocably, and unavoidably, (ii) the date of any DIP Facility Event of Default, and (iii) April [ ]?, 2017.

SCM has raised its adequate protection concerns with the Debtors, who have an emergency need for funds. A proposed Stipulated SCM Cash Collateral Order is attached as Exhibit 13 as a reasonable proposal to resolve those concerns.

**4.     Modification of the Interim DIP Financing Approval Order**

SCM further requests that the provisions of the Stipulated SCM Cash Collateral Order be incorporated by reference in the Interim DIP Financing Approval Order, and remain in effect pending full and irrevocable payment of SCM's secured indebtedness. The draft Interim DIP Financing Approval Order, as filed, includes virtually no provisions for SCM's adequate protection. The DIP Financing Motion merely asserts that SCM is over-secured. As described in this filing, SCM does not enjoy such a huge and unchanging equity cushion as to adequately protect it from significant deterioration of its secured position.

The DIP Financing Motion assumes that SCM's secured claim will be paid in full on the Effective Date, defined as the Interim Approval Order date. The DIP Financing Agreement provides for Permitted Senior Lenders, but without including the Schedule identifying them, and with an exclusion that apparently was intended to justify subordinating their rights to those of the DIP Lender, eliminating after-acquired property liens, priming SCM's Section 507(b) claim, redirecting SCM's Cash Collateral to a new lockbox, etc.

The Interim DIP Financing Order should be amended to incorporate the Stipulated SCM Cash Collateral Order, and provide for it to supersede any inconsistent provisions of the Interim DIP Financing Order. If SCM's secured claims are not irrevocably paid in full under an Interim or Final DIP Financing Order, the Stipulated SCM Cash Collateral Order will need to be amended to provide for ongoing Cash Collateral protection of SCM. A revision of the proposed Interim Approval Order with SCM's changes shown in Track Changes is Exhibit 12.

DATED this 4th day of April, 2017.

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

By: */s/ Robert M. Charles, Jr.*
    Susan M. Freeman
    Robert M. Charles, Jr.
*Counsel for SCM Specialty Finance Opportunities Fund, L.P.*

**Exhibits**

1. Credit and Security Agreement dated as of August 14, 2015
2. First Amendment to Credit and Security Agreement and Waiver of Default dated as of May 3, 2016
3. Term Loan and Security Agreement dated as of January 9, 2015
4. First Amendment to Term Loan and Security Agreement dated as of January 26, 2015
5. Second Amendment to Term Loan and Security Agreement and Waiver of Event of Default dated as of July 10, 2015
6. Third Amendment to Term Loan and Security Agreement dated as of October 9, 2015
7. Fourth Amendment to Term Loan and Security Agreement dated as of January 4, 2016
8. Commercial Lockbox Control Agreement
9. Government Lockbox Control Agreement
10. UCC-1 financing statement filed with the Arizona Secretary of State on January 16, 2015 at 2015-000-2963-4
11. UCC-1 financing statement filed with the Arizona Secretary of State on July 13, 2015 at 2015-002-3746-6
12. Proposed Interim Approval Order with SCM's changes shown in Track Changes
13. Proposed Stipulated SCM Cash Collateral Order

**CERTIFICATE OF SERVICE**

I certify that on this 5th day of April, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

JODY A. CORRALES on behalf of Creditor   Padmon, LLC
jcorrales@dmyl.com,  mfelix@dmyl.com

DEAN M. DINNER on behalf of Creditor James R. McDowell ddinner@ngdlaw.com, srivera@ngdlaw.com,ngd.ecf@ngdlaw.com,sdousdebes@ngdlaw.com

S. CARY FORRESTER on behalf of Debtor   GV HOSPITAL MANAGEMENT, LLC
scf@forresterandworth.com,  mdb@forresterandworth.com

STEVEN D. JEROME on behalf of Creditor   Green Valley Medical Investments, LLLP
sjerome@swlaw.com,  docket@swlaw.com,mminnick@swlaw.com

ALISA C. LACEY on behalf of Creditor   CERNER CORPORATION
alisa.lacey@stinson.com,  anne.finch@stinson.com,Lindsay.petrowski@stinson.com

ROBERT A. SHULL on behalf of Creditor   Artemis Realty Capital Advisors, LLC
rshull@dickinsonwright.com,  csabori@dickinsonwright.com

KELLY  SINGER on behalf of Interested Party   LATERAL U.S. CREDIT OPPORTUNITIES FUND, L.P.
kelly.singer@squirepb.com,  wendy.anderson@squirepb.com

LARRY L. WATSON on behalf of U.S. Trustee   U.S. TRUSTEE
larry.watson@usdoj.gov


 */s/ Renee L. Creswell*
Renee L. Creswell
Lewis Roca Rothgerber Christie LLP