# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GV HOSPITAL MANAGEMENT, LLC,<br>et al.<br><br>              Debtors. | Chapter 11<br><br>Case No. 4:17-bk-03351-SHG<br><br>**INTERIM ORDER (1) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (2) GRANTING LIENS AND SUPERPRIORITY CLAIMS PURSUANT TO 11 U.S.C. § 364; (3) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (4) SCHEDULING A FINAL HEARING; AND (5) GRANTING RELATED RELIEF** |

Upon the motion, dated April 3, 2017 [DE 7] (the "**DIP Motion**"), of Green Valley Hospital, LLC ("**GVH**"), GV Hospital Management, LLC, ("**Management**" or "**Borrower**") and GV II Holdings, LLC ("**GVII**" and together with Management, the "**Debtors**"), as debtors and debtors in possession, in the above-referenced cases (the "**Chapter 11 Cases**"), seeking entry of an interim order (this "**Interim Order**") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), 364(e), 365, 507 and 552 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-3 of the Local Rules of Bankruptcy Procedure for the District of Arizona (the "**Local Rules**"), that, among other things:

        (i)      authorizes Management, as Borrower, and GVH and GVII as guarantors (together, the "**Guarantors**"), to enter into a senior secured, super-priority, multiple draw term

credit facility (such facility, the "**DIP Facility**") of up to $20,000,000 in aggregate principal amount pursuant to the terms of (x) this Interim Order, (y) that certain Senior Secured Super Priority Debtor in Possession Credit Agreement in substantially the form attached hereto as <u>Exhibit A</u> (as the same may be amended, restated, supplemented or otherwise modified from time to time and subject to the restrictions set forth herein, the "**DIP Credit Agreement**")[1] among the Debtors and Lateral GV, LLC as the lender (the "**DIP Lender**"), and Lateral SMA Agent, LLC, not individually, but as the Agent for DIP Lender (the "**DIP Administrative Agent**" and together with the DIP Lender, the "**DIP Secured Parties**") and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement, collectively, the "**DIP Loan Documents**"), which, if approved on a final basis, would consist of $20,000,000 in new money funding (the "**DIP Loans**"), of which up to approximately $3,500,000[2] shall be available upon entry of this Interim Order, plus the Lender Advances as provided for herein, subject to the terms and conditions of this Interim Order, the Final Order (as defined below) and the DIP Loan Documents (all DIP Loans made to or for the benefit or account of, and all guaranties issued by, any of the Debtors pursuant to the DIP Loan Documents, and all other obligations and liabilities of any of the Debtors arising under the DIP Loan Documents, including, without limitation, all Loan Document Obligations as defined in the DIP Credit Agreement, collectively, the "**DIP Obligations**");

---

[1] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Credit Agreement.

[2] Per the presentation of the DIP Motion to the Court at the Interim Hearing (defined below), this amount is the parties' best estimate as of April 7, 2017 and comprises, (i) $450,000 for Debtors' operating costs, as described in the Budget; (ii) $2,101,736.10 to pay off SCM Specialty Finance Opportunities Fund, L.P.; (iii) up to $38,000 to pay off Cardinal Health; (iv) $400,000 for a portion of the DIP Lender's interest reserve; (v) $100,000 of Lender Advances consisting of a portion of pre- and post-petition attorneys' fees for the DIP Lender's professionals; and (vi) $400,000 of the Structuring Fees (as that term is defined in the Fee Letter).

2

(ii)　　approves the terms of, and authorizes and directs the Debtors to execute and deliver, and perform under, the DIP Loan Documents and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iii)　　authorizes and directs the Debtors to grant, in accordance with the relative priorities set forth herein (x) to the DIP Administrative Agent (for the benefit of itself and the other DIP Secured Parties) Liens on all of the DIP Collateral (as defined below) pursuant to sections 364(c) and (d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) but shall be junior to the Permitted Senior Liens held by any of the Permitted Senior Lenders (each as defined below) and (y) to the DIP Secured Parties super-priority administrative expense claims having recourse to all prepetition and post-petition property of the Debtors' estates, now owned or hereafter acquired (with the exception of Avoidance Actions (as defined below)) and proceeds thereof;

(iv)　　authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including, without limitation, Cash Collateral in which the Prepetition First Lien Lender (as defined below) and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise;

(v)　　grants, as of the Petition Date and in accordance with the relative priorities set forth herein, certain adequate protection to the Prepetition First Lien Lender (as defined below), consisting of, among other things, Adequate Protection Liens (as defined below) and Adequate Protection Super-Priority Claims (as defined below);

3

(vi)    vacates the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(vii)   authorizes the DIP Secured Parties to exercise remedies upon the occurrence and continuance of an Event of Default (under and as defined in the DIP Loan Documents) after written notice and as further specified in this Interim Order;

(viii)  schedules a final hearing on the DIP Motion to be held within 30 days after the entry of this Interim Order (the **"Final Hearing"**) to consider entry of a final order acceptable in form and substance to the DIP Administrative Agent that grants all of the relief requested in the DIP Motion on a final basis (the **"Final Order"**); and

(ix)    waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

Having considered the DIP Motion, the Omnibus Declaration of John Matuska in Support of First Day Motions, the DIP Credit Agreement and the evidence submitted at the interim hearing (the "**Interim Hearing**") on the DIP Motion; the objections regarding the DIP Motion [DE Nos. 34, 35, and 40] (collectively, the "**Objections**"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on April 6, 2017; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the

4

Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[3], that:**

A.    **Petition Date**.  On April 3, 2017 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Arizona (the **"Bankruptcy Court"**).  The Debtors have continued in the management and operation of their business and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (to the extent such committee is appointed, the "**Committee**"), trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue**.  The Bankruptcy Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Rules.

C.    **Authority**.  Each Debtor has duly authorized entry into the DIP Loan Documents to which it is a party by all necessary corporate action and, upon execution, the DIP Loan Documents will constitute a legal, valid and binding obligation of each Debtor in accordance with their terms.

D.    **Notice**.  The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-4.  Notice of the Interim Hearing and the relief

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic

mail, overnight courier, hand delivery and/or telephone, on April 4-6, 2017, to certain parties in

interest, including: (a) the Office of the United States Trustee for the District of Arizona (the "**U.S.**

**Trustee**"); (b) counsel for the Prepetition First Lien Lender; (c) counsel for the Permitted Senior

Lenders (as defined below) (d) the Debtors' largest unsecured creditors; and (e) counsel to the

Committee, if one is appointed.  Such notice of the DIP Motion, the relief requested therein and

the Interim Hearing is sufficient under the circumstances.

   E.  **Findings Regarding the DIP Facilities**.

   (i)  <u>Need for Post-petition Financing</u>.  The Debtors have an immediate need to

obtain the DIP Facility and use Cash Collateral, among other things, to permit the orderly

continuation of the operation of their businesses, to maintain business relationships with vendors,

suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other

working capital and operation needs.  The Debtors' access to sufficient working capital and

liquidity through the use of borrowing under the DIP Facility and through the use of Cash

Collateral is vital to the preservation and maintenance of the going concern value of the Debtors

and their successful reorganization.

   (ii)  <u>No Credit Available on More Favorable Terms</u>.  The Debtors have been and

continue to be unable to obtain financing on more favorable terms from sources other than the DIP

Secured Parties under the DIP Loan Documents.  The Debtors are unable to obtain adequate

unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative

expense, or secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the

Bankruptcy Code without incurring prohibitive litigation and/or execution expenses that would

erode the value of the Debtors' estate and harm all parties in interest.  The Debtors are also unable

6

to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Secured Parties the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents, including, without limitation, the DIP Liens and the DIP Super-Priority Claims (as defined below) (all of the foregoing, including the DIP Liens and the DIP Super-Priority Claims, collectively, the "**DIP Protections**").

F.     **Adequate Protection for Prepetition Secured Parties**.

(i)     As of the Petition Date, GVH, as borrower, and Green Valley Medical Investments, LLLP, as lender, (the **"Prepetition First Lien Lender"**), were parties to that certain Loan and Security Agreement, dated as of January 10, 2012, (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "**Prepetition First Lien Credit Agreement**" and together with the other Loan Documents (as defined in the Prepetition First Lien Credit Agreement), in each case as amended, restated, supplemented or otherwise modified prior to the Petition Date, collectively, the **"Prepetition First Lien Loan Documents"** and the credit facility contemplated therein, the "**Prepetition First Lien Credit Facility**"). The Prepetition First Lien Credit Facility is secured by Liens granted to, or for the benefit of, the Prepetition First Lien Lender (the "**Prepetition First Liens**") on the Debtors' property as provided for in the Prepetition Loan Documents (the "**Prepetition First Lien Collateral**"). The Prepetition First Lien Lender has consented to the DIP Liens and the use of Cash Collateral pursuant to the terms of the DIP Loan Documents, this Interim Order and the *Subordination and Intercreditor Agreement by and between Lateral U.S. Credit Opportunities Fund, L.P. and Green Valley Medical Investments, LLP* (the "**Subordination Agreement**"). The Prepetition First Lien Lender

7

is entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any Diminution in Value (as defined below), to the extent permitted by the Subordination Agreement. Based on the Motion and on the record presented to the Bankruptcy Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and use of the Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition First Lien Lender's consent thereto. The Prepetition First Lien Lender consented to the entry of this Interim Order and the relief provided herein.

G.     **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)     The DIP Secured Parties have indicated a willingness to provide post-petition secured financing via the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Interim Order.

(ii)     The terms and conditions of the DIP Facility pursuant to the DIP Loan Documents and this Interim Order, and the fees, costs, expenses and attorney fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their respective fiduciary duties, and are supported by reasonably equivalent value and consideration.

(iii)     Based on the record presented to the Bankruptcy Court at the Interim Hearing, the DIP Facility and the DIP Loan Documents were negotiated in good faith and at arms' length among the Debtors, on the one hand, and the DIP Secured Parties, on the other hand, each with the assistance and counsel of their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates for valid

8

business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Liens, the DIP Super-Priority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event this Interim Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

H.     **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2) and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to successfully reorganize will be immediately and irreparably harmed. Consummation of the DIP Facility in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates consistent with their respective fiduciary duties.

**NOW, THEREFORE**, on the DIP Motion and the record before the Bankruptcy Court with respect to the DIP Motion, including, the Objections, and with the consent of the Debtors, the Prepetition First Lien Lender, the DIP Secured Parties, and the Office of the United States Trustee, as to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  To the extent of any inconsistencies between the Interim Order and the DIP Loan Documents, the provisions of this Interim Order shall control. Any objections to the DIP Motion with respect to the entry of this

Case 4:17-bk-03351-SHG   Doc 49   Filed 04/07/17   Entered 04/07/17 13:10:33   Desc
Main Document      Page 9 of 44

Interim Order, including the Objections, that have not been withdrawn, waived or settled, are hereby denied and overruled.

2. **DIP Loan Documents and DIP Protections**.

(a)     Approval of DIP Loan Documents.  The Debtors are expressly and immediately authorized and directed to (i) establish the DIP Facility, (ii) execute, deliver and perform under the DIP Loan Documents and to incur the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and (iii) execute, deliver and perform under all other instruments, certificates, agreements and documents which may be required or necessary for the performance by any of the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in, and provided by, this Interim Order and the DIP Loan Documents.  The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, costs, expenses, attorneys' fees and other amounts described in the DIP Loan Documents to the extent authorized under this Interim Order, as such have become due or become due pursuant to the DIP Loan Documents and this Interim Order, including, without limitation,  structuring fees, closing fees, administrative fees, arrangement fees, fronting fees, commitment or backstop fees, letter of credit fees and reasonable attorneys' and financial advisors' fees and disbursements arising under the DIP Loan Documents and this Interim Order, which amounts shall not be subject to further approval of the Bankruptcy Court and shall be non-refundable; provided, however, that the payment of the fees and expenses of the Lender Professionals (as defined below) incurred after the Petition Date shall be subject to the provisions of Paragraph 17(a).  Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtors enforceable against each Debtor in accordance with their terms.  Each officer of any Debtor acting singly is hereby authorized to execute and deliver

10

each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the respective Debtor.

(b)     **Authorization to Incur DIP Obligations**.  To enable the Debtors to continue to operate their businesses, during the period from the entry of this Interim Order through and including the earlier of (i) the entry of a Final Order or (ii) the date that is forty-five (45) days after the entry of this Interim Order if the Final Order Entry Date shall not have occurred by such date (the "**Interim Period**"), and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including, without limitation, Sections 3.14, 5.10 and 6.12 of the DIP Credit Agreement (as the same may be modified, supplemented or updated from time to time, the "**Budget Covenants**"), the Borrower is hereby authorized to borrow DIP Loans under the DIP Facility in an aggregate outstanding principal amount not to exceed $3,500,000 (the "**Interim Advance**").  The Interim Advance shall be used solely for the following estimated amounts (as of April 7, 2017): (i) $450,000 for Debtors' operating costs, as provided in the Budget; (ii) $2,101,736.10 to pay off SCM Specialty Finance Opportunities Fund, L.P. ("**SCM**"), in exchange for the full satisfaction of SCM's claims and SCM's release of any and all liens on the Debtors' property; (iii) up to $38,000 to pay off Cardinal Health, in exchange for the full satisfaction of Cardinal Health's claims and Cardinal Health's release of any and all liens on the Debtors' property; (iv) $400,000 for a portion of the DIP Lender's interest reserve; (v) $100,000 of Lender Advances consisting of a portion of pre- and post-petition attorneys' fees for the DIP Lender's professionals; and (vi) $400,000 of the Structuring Fees (as that term is defined in the Fee Letter). Notwithstanding the foregoing, and with the exception of the deferred remaining Structuring Fees and legal fees as agreed to at the Interim Hearing, the DIP Lender may also make such other Lender Advances as it seems necessary or desirable as set forth in section 2.01(c) of the DIP Credit

11

Agreement.

(c)     Following the expiration of the Interim Period, the Borrower's authority to borrow further DIP Loans will be governed by the terms of the Final Order.

(d)     <u>Application of DIP Facility and DIP Collateral Proceeds</u>.  The proceeds of the DIP Facility and DIP Collateral (in each case net of any amounts used to pay fees, principal, interest, costs and expenses of the DIP Facility pursuant to, and in accordance with, the DIP Loan Documents and this Interim Order) shall be used in accordance with the terms and conditions of the DIP Loan Documents and this Interim Order, including, without limitation, the Budget Covenants, solely for (i) working capital; (ii) other general corporate purposes of the Debtors (including intercompany loans and investments solely to the extent permitted by the Budget, the DIP Loan Documents and this Interim Order); and (iii) the costs of administration of the Chapter 11 Cases.  Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of any confirmed chapter 11 plan with respect to such Debtor, except with respect to the prepetition obligations as set forth in this Interim Order or as otherwise provided in any "first day" order entered by the Bankruptcy Court (which "first day" orders shall be in form and substance reasonably acceptable to the DIP Administrative Agent) or as otherwise provided in the DIP Credit Agreement.  A copy of the initial approved Budget is attached as <u>Exhibit B</u>.

(e)     <u>Conditions Precedent</u>.  The DIP Secured Parties shall have no obligation to make any DIP Loan or make any other extension of credit or financial accommodation in respect of the DIP Facility or otherwise during the Interim Period unless and until all conditions precedent to the making of any such DIP Loan or other extension of credit or financial accommodation under

12

the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the requisite DIP Secured Parties in accordance with the DIP Loan Documents and this Interim Order.

(f)    DIP Liens.  Effective immediately upon the entry of this Interim Order, and subject to the relative lien priorities among the DIP Secured Parties, the Prepetition First Lien Lender, and the Permitted Senior Lenders (as defined below), in each case as set forth more fully in this Interim Order, the DIP Administrative Agent is hereby granted, for the benefit of the DIP Secured Parties, the following Liens (which shall immediately, and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable) on all property of the Debtors, now existing or hereafter acquired, including, without limitation, all cash and cash equivalents, and any investment in such cash or cash equivalents, money, motor vehicles and rolling stock, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title**,** letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock or equity interests of subsidiaries, tax refunds, insurance proceeds, commercial tort claims (with the exception of the Excluded Tort Claims, as defined below, for purposes of this Interim Order, and without the need to comply with any requirement, under the Uniform Commercial Code or otherwise, to specifically identify any such commercial tort claim), membership interests and other equity ownership interests, all other Collateral (as defined in the DIP Credit Agreement) and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document      Page 13 of 44

existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "**DIP Collateral**," and all such Liens granted to the DIP Administrative Agent as provided in the DIP Loan Documents and for the benefit of the DIP Secured Parties in respect of the Secured Obligations under, and as defined in the DIP Credit Agreement, each as pursuant to this Interim Order and the DIP Loan Documents, the "**DIP Liens**"):

> (I)      pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority Lien on all unencumbered DIP Collateral, and, upon the pay-off of SCM, all of the Debtors' property constituting "Collateral" as that term is defined in the Term Loan and Security Agreement between Green Valley Hospital, LLC and SCM Specialty Finance Opportunities Fund, L.P. dated as of January 9, 2015, and as amended from time to time (the "**SCM Collateral**"); provided, however, that DIP Collateral shall not include the proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 and 724(a) of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law ("**Avoidance Actions**"), whether received by judgment, settlement or otherwise; provided, further, however, for purposes of this Interim Order, the DIP Collateral and superpriority claim shall not include any claims, causes of action, and other rights of Debtors against Dr. Jacque Sokolov, SSB Solutions, Inc., a California corporation, Morris C. Aaron, MCA Financial Group, Ltd., an Arizona corporation, andArtemis Realty Capital Advisors, LLC, and any claims, and causes of action against Debtors' present and former officers and directors, whether individuals or entities (collectively, the "**Excluded Tort Claims**");

> (II)      pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior Lien upon all DIP Collateral (including, without limitation, Cash Collateral, with the exception of the SCM Collateral after SCM is paid as referred to above) which shall be subject and subordinate to all of the "**Permitted Senior Liens**" (as

such term is defined in the DIP Loan Documents).[4] The holders of Permitted Senior Liens are sometimes referred to herein as the "**Permitted Senior Lenders**"; and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming Lien on all DIP Collateral that is senior to (x) the existing Prepetition First Liens in favor of the Prepetition First Lien Lender, or (y) to the maximum extent permitted under applicable law, any existing Liens in favor of any other person or entity (other than the Permitted Senior Liens), including, without limitation, all Liens junior to the Prepetition First Liens (the Liens referenced in clauses (x) and (y), collectively, the "**Primed Liens**"), which Primed Liens, together with any Liens granted on or after the Petition Date to provide adequate protection in respect of any Primed Liens, shall be primed by and made subject and subordinate to the perfected first priority senior priming DIP Liens.

(g)    <u>DIP Lien Priority</u>.  Notwithstanding anything to the contrary contained in this Interim Order or the other DIP Loan Documents, and for the avoidance of doubt, the DIP Liens granted to the DIP Administrative Agent (for the DIP Secured Parties) shall in each and every case be first priority senior Liens that (i) are subject and subordinate only to the Permitted Senior Liens (not including the SCM Collateral  after SCM is paid off as referred to above) and to the extent provided in the provisions of this Interim Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in clause (i), are senior to all other post-petition Liens of any other person or entity (including, without limitation, the Primed Liens and the Adequate Protection Liens).  The DIP Liens on any real property or interests in real property owned by the

---

[4] "Permitted Senior Lien" is defined in the DIP Credit Agreement to mean: "[T]o the extent not subordinated or invalidated by order of the Bankruptcy Court, or as provided in the Subordination Agreement, any valid, enforceable, and non-avoidable Lien that was perfected prior to the Petition Date and that secures obligations identified on Schedule 6.02, except to the extent the holders will be paid off on or prior to the Effective Date. For the avoidance of doubt this term 'Permitted Senior Lien' shall not include any liens held by (i) Green Valley Medical Investments, LLLP, or (ii) SCM Specialty Finance Opportunities Fund, L.P."  A copy of Schedule 6.02 is attached hereto as <u>Exhibit C</u>.

Debtors shall be considered "First Mortgages" under that *Green Valley Hospital Campus Declaration of Covenants, Conditions, Easements and Restrictions*, recorded in Pima County, Arizona, County Recorder's Office as Document No. 20151380758, as amended. The DIP Liens and the DIP Super-Priority Claims (i) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code, or, subject to the entry of the Final Order, section 506(c) of the Bankruptcy Code, (ii) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their respective estates under section 551 of the Bankruptcy Code, (y) any Liens arising after the Petition Date, including, without limitation, any Liens granted or ordered by the Bankruptcy Court at any time in the Chapter 11 Cases, or (z) any intercompany or affiliate Liens of the Debtors, and (iii) shall be valid and enforceable against any trustee or any other estate representative appointed in any of the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), and/or upon the dismissal of any of the Chapter 11 Cases.

(h)     Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against such Debtors, their estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms and this Interim Order.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or

16

similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise) counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(i)     Super-Priority Administrative Expense Claim Status.  In addition to the DIP Liens granted herein, (1) effective immediately upon entry of this Interim Order, all of the DIP Obligations authorized to be incurred by the Debtors pursuant to this Interim DIP Order and (2) effective immediately upon entry of the Final Order, all of the DIP Obligations shall constitute allowed super-priority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out to the extent specifically provided in the DIP Loan Documents and this Interim Order, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Super-Priority Claims), unsecured claims and all other claims against the any of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "**DIP Super-Priority Claims**").  The DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to all prepetition and post-petition property of the Debtors and all proceeds thereof; provided, however, that the DIP Super-Priority Claims shall not have recourse to the Debtors' Avoidance Actions or

17

the proceeds thereof, nor subject to entry of the Final Order, the Excluded Tort Claims. Other than as provided in the DIP Loan Documents and this Interim Order with respect to the Carve-Out, and, prior to the entry of a Final Order, any valid 506(c) claim, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, 331 and 363 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens, the DIP Super-Priority Claims, or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

3.     **Authorization to Use Proceeds of DIP Facility, Including Cash Collateral.**

Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including without limitation, the Budget Covenants, (a) the Debtors are authorized to use proceeds of DIP Loans from and after the Effective Date (as defined in the DIP Credit Agreement), and (b) the Debtors are authorized to use all Cash Collateral, and the Debtors shall be enjoined and prohibited from, at any time, using proceeds of DIP Loans or Cash Collateral except in accordance with the terms and conditions of this Interim Order and the DIP Loan Documents. The Debtors' right to use proceeds of DIP Loans, DIP Collateral, and Cash Collateral shall terminate (i) automatically upon the occurrence of the Maturity Date (under and as defined in the DIP Credit Agreement) or (ii) immediately upon notice to such effect by the DIP Administrative Agent to any of the Debtors after the occurrence and during the continuance of an Event of Default (the applicable termination date specified in clause (i) or (ii) above, the "**Termination Date**").

4.     **Adequate Protection for Prepetition First Lien Lender**. As adequate protection for the interests of the Prepetition First Lien Lender in the Prepetition First Lien Collateral (including Cash Collateral) for, and in an aggregate amount equal to, the diminution in value (collectively, "**Diminution in Value**") of such interests from and after the Petition Date, calculated

18

in accordance with section 506(a) of the Bankruptcy Code, resulting from the use, sale or lease by any of the Debtors of the applicable Prepetition First Lien Collateral (including Cash Collateral), the granting of the DIP Liens, the subordination of the Prepetition First Liens thereto and to the Carve-Out, or the imposition or enforcement of the automatic stay of section 362(a), the Prepetition First Lien Lender shall receive the following adequate protection (collectively referred to as the "**Prepetition First Lien Lender' Adequate Protections**"):

(a)     Adequate Protection Liens.  Solely to the extent of any aggregate post-petition Diminution in Value of the prepetition interests of the Prepetition First Lien Lender in the Prepetition First Lien Collateral, the Prepetition First Lien Lender is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, valid, perfected and unavoidable senior Liens (including replacement Liens) upon all of the DIP Collateral (the "**Adequate Protection Liens**"), which Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Permitted Senior Liens, and the payment of the Carve-Out to the extent expressly provided in the DIP Loan Documents and this Interim Order.

(b)     Adequate Protection Super-Priority Claims.  Solely to the extent of any aggregate post-petition Diminution in Value, the Prepetition First Lien Lender is hereby granted, subject to the payment of the DIP Super-Priority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, allowed super-priority administrative expense claims (the "**Adequate Protection Super-Priority Claims**") as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the DIP Super-Priority Claims and payable from and having recourse to all prepetition and post-petition property of the Debtors, with the exception of the Debtors' Avoidance Actions, and all proceeds thereof; provided, however, that the Prepetition

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document    Page 19 of 44

First Lien Lender shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Super-Priority Claims unless and until (x) all DIP Obligations have indefeasibly been paid in full in cash, and (y) all Commitments under the DIP Loan Documents have been irrevocably terminated (the conditions described in clauses (x) and (y), collectively, "**Paid in Full**" or "**Payment in Full**").

(c)     <u>Right to Seek Additional Adequate Protection</u>.   Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Bankruptcy Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition First Lien Lender. However, the Prepetition First Lien Secured Party and any of the Permitted Senior Lender may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request (notwithstanding their agreement to otherwise consent to the terms of this Order); <u>provided</u> that any such further or different adequate protection shall at all times be subordinate and junior to the claims and Liens of the DIP Secured Parties granted under this Interim Order and the DIP Loan Documents.

(d)     <u>Consent to Priming and Adequate Protection</u>.   The Prepetition First Lien Lender consents to the adequate protection and the priming provided for herein.

5.     **Automatic Post-petition Lien Perfection**.   This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens and the Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction, (b) obtaining consents from any landlord, licensor, or other party in interest, (c) complying with any requirement, under the Uniform Commercial Code

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document       Page 20 of 44

or otherwise, to specifically identify any commercial tort claim, or (d) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Administrative Agent and Prepetition First Lien Lender may, each in their sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time of and on the Petition Date. Unless otherwise ordered by the Bankruptcy Court, the Debtors shall execute and deliver to the DIP Administrative Agent and/or the Prepetition First Lien Lender, as applicable, all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Administrative Agent and Prepetition First Lien Lender, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for any Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof

Case 4:17-bk-03351-SHG   Doc 49   Filed 04/07/17   Entered 04/07/17 13:10:33   Desc
Main Document      Page 21 of 44

or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by the respective Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Interim Order. To the extent that the Prepetition First Lien Lender is listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition First Lien Loan Document, the DIP Administrative Agent shall also be deemed to be the loss payee under the Debtors' insurance policies and the secured party under each such Prepetition First Lien Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP Loan Documents and this Interim Order, and second, subsequent to indefeasible Payment in Full of all DIP Obligations, for the benefit of the Prepetition First Lien Lender. The Prepetition First Lien Lender shall serve as agent for the DIP Administrative Agent for purposes of perfecting its Liens on all DIP Collateral that is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

6.     **Carve Out**. Subject to the terms and conditions contained in this Paragraph 6, each of the DIP Liens, DIP Super-Priority Claims, Prepetition First Liens, Adequate Protection Liens and Adequate Protection Super-Priority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below) solely in the event of the delivery of a Carve-Out Trigger Notice (as defined below) after the occurrence and during the continuance of an Event of Default under, and as defined in, the DIP Loan Documents:

(a)     For purposes of this Interim Order, "**Carve-Out**" means (i) all

unpaid fees required to be paid in the Chapter 11 Cases to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6), in such amount agreed to by the Office of the United States Trustee or as determined by the Bankruptcy Court, whether arising prior to or after the delivery of the Carve-Out Trigger Notice; (ii) fees, disbursements, costs and expenses which are incurred after the Petition Date and before the delivery of a Carve-Out Trigger Notice in an amount not to exceed the amounts set forth in the Budget for each Professional (as defined below), less any amount actually paid to each such Professional, retained by the Debtors and any Committee pursuant to Bankruptcy Code sections 327, 330, 363 and 1103 (collectively, the "**Professionals**"), to the extent allowed at any time by the Bankruptcy Court and owed pursuant to such Professionals' respective engagement letters; (iii) the fees, disbursements, costs and expenses of Professionals in an aggregate amount not to exceed $200,000 that are incurred after the delivery of a Carve-Out Trigger Notice and which are ultimately allowed by the Bankruptcy Court (the "**Carve-Out Cap**").  The term "**Carve-Out Trigger Notice**" shall mean a written notice delivered by the DIP Administrative Agent to the Debtors' lead counsel, the U.S. Trustee, and lead counsel to any Committee appointed in the Chapter 11 Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default under the DIP Loan Documents, expressly stating that the Carve-Out (and the Carve-Out Cap) is invoked.

    (b)  Following the delivery of the Carve-Out Trigger Notice after the occurrence and during the continuance of any Event of Default under the DIP Loan Documents, any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503 or 1103 or otherwise, to Professionals shall (i) not be paid from the proceeds of any DIP Loan, DIP Collateral, or Cash Collateral until such time as all retainers, if any, held by such Professionals have been

23

reduced to zero, and (ii) in the case of any payments made on account of any fees and expenses described in clause (iii) of the definition of Carve-Out, reduce the Carve-Out Cap on a dollar-for-dollar basis.

(c)     Notwithstanding any provision in this Paragraph 6 to the contrary, no portion of the Carve-Out, Cash Collateral, DIP Collateral, or proceeds of the DIP Facility shall be utilized for the payment of fees and disbursements of Professionals to the extent restricted under Paragraph 14 hereof.

(d)     Nothing herein shall be construed as consent to the allowance of any Professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in the Chapter 11 Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party to object to the allowance and payment of such fees and expenses.

7.     **Waiver of Section 506(c) Claims**.  Subject to entry of the Final Order, as a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Chapter 11 Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Secured Parties, the DIP Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Administrative Agent, and no such consent shall be implied from any action, inaction, or acquiescence of any or all of the DIP Secured Parties.

8.     **After-Acquired Property**.  Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by any of the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity

24

resulting from any security agreement entered into by any of the Debtors prior to the Petition Date including, without limitation, in respect of the Prepetition First Lien Credit Facility (other than with respect to the replacement Liens that form a portion of the Adequate Protection Liens), except to the extent that such property constitutes proceeds of property of any Debtor that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

9. **Protection of DIP Secured Parties' Rights**.

(a) Until such time that all DIP Obligations have been Paid in Full, the Prepetition First Lien Lender shall (i) not exercise any right or remedy relating to the DIP Collateral, including without limitation, seeking relief from the automatic stay, seeking any sale, realization upon repossession or liquidation of any property, or taking any action to foreclose upon or recover in connection with the Liens granted in respect of the Prepetition First Lien Credit Facility (including, without limitation, the Prepetition First Liens and the Adequate Protection Liens), or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any and all releases of DIP Collateral authorized under the DIP Loan Documents or otherwise consented to by the requisite DIP Secured Parties (provided that the Liens of the Prepetition First Lien Lender attach to the proceeds of any disposition of such released DIP Collateral with the same priorities as provided herein), and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of Lien or similar instruments, or otherwise take any action to perfect their Liens on the DIP Collateral unless, solely as to this clause (iii) and solely with respect to the Adequate Protection Liens, the DIP Administrative Agent files financing statements or other documents to perfect the Liens granted pursuant to this Interim

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document       Page 25 of 44

Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable Liens as of the Petition Date.

(b)     Unless the DIP Administrative Agent shall have provided its prior written consent or all DIP Obligations have been indefeasibly Paid in Full (or will be indefeasibly Paid in Full upon entry of a final, non-appealable order approving indebtedness described in clause (i) of this subsection (b)), there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, DIP Super-Priority Claims and other DIP Protections granted pursuant to this Interim Order to the DIP Secured Parties; or (ii) the use of Cash Collateral for any purpose other than to indefeasibly Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order.

(c)     The Debtors (and/or their respective legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records and accounts to the extent and as required by the DIP Loan Documents, (ii) cooperate, consult with, and provide to the DIP Administrative Agent all such information as required or allowed under the DIP Loan Documents or the provisions of this Interim Order, (iii) permit representatives of the DIP Administrative Agent such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their books and records, to conduct a collateral audit and analysis of their inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their affairs, finances, properties, business operations and accounts with any of the Debtors' respective officers, employees and independent

public accountants as and to the extent required by the DIP Loan Documents, and (iv) permit representatives of the DIP Administrative Agent to consult with the Debtors' respective management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

10. **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of Paragraph 9 above, if at any time prior to the indefeasible Payment in Full of all DIP Obligations (including subsequent to the confirmation of a chapter 11 plan with respect to one or more of the Debtors), any of the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) or any other provision of the Bankruptcy Code (except 506(c) until entry of a Final Order) in violation of the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Administrative Agent, until indefeasible Payment in Full of the DIP Obligations in accordance with the DIP Loan Documents.

11. **Cash Collection**. With the exception of Government Health-Care-Insurance Receivables, and except to the extent otherwise provided herein or in the DIP Loan Documents, all cash collections (including, but not limited to, payments from customers with respect to accounts receivable) constituting proceeds of DIP Collateral shall be directed to lock-box and/or deposit accounts ("**Cash Collection Accounts**") under the dominion and control of the DIP Administrative Agent pursuant to deposit account control agreements or other structure reasonably satisfactory to the DIP Administrative Agent and in compliance with the Cash Management Order (as defined below). Upon the direction of the DIP Administrative Agent at any time after the occurrence of an Event of Default and the lapse of any notice period specified herein or in the DIP

Case 4:17-bk-03351-SHG   Doc 49   Filed 04/07/17   Entered 04/07/17 13:10:33   Desc
Main Document      Page 27 of 44

Loan Documents, all proceeds in the Cash Collection Accounts shall be remitted to the DIP Administrative Agent until Payment in Full of the DIP Obligations, and the DIP Administrative Agent shall take all action that is necessary or appropriate to effectuate the foregoing. Unless otherwise agreed to in writing by the DIP Administrative Agent, the Debtors shall maintain no accounts except those identified in any order of the Bankruptcy Court approving the Debtors' cash management system (the "**Cash Management Order**"). The Debtors and the financial institutions where the Debtors' cash collection accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Administrative Agent. The Debtors are authorized to incur obligations and liabilities for treasury, depositary or cash management services, including without limitation, overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services provided on a post-petition basis by any financial institution at which any Cash Collection Account is maintained; provided, however, that (i) any Lien securing any such obligations shall be junior to the DIP Lien on the funds in the cash collection accounts at such financial institution, and (ii) except to the extent otherwise required by the Bankruptcy Court, nothing herein shall require any DIP Secured Party to incur any overdrafts or provide any such services or functions to the Debtors. All account receivables and their proceeds comprising any of (i) Medicare and Medicaid receivables, (ii) third-party insurance payor receivables, or (iii) patient receivables, must be swept, on a daily basis, and deposited when received from any respective government or other "lock-box" account into a Cash Collection Account, as directed by the DIP Secured Parties, and subject to a deposit account control agreement(s) in form and substance satisfactory to the DIP Secured Parties. With the exception of the lockbox into which

28

Government Health-Care Insurance Receivables are initially deposited, all of such Debtors' bank account(s) shall be deemed Cash Collection Accounts. As provided in the DIP Loan Documents and for the avoidance of doubt, it shall be an Event of Default under the DIP Loan Documents and this Interim Order if the United States, any governmental unit, or any agency or representative of the United States or any governmental unit, asserts or threatens to assert an "administrative freeze," other stay, or cessation of Medicare and/or Medicaid receivable payments, which Event of Default shall entitle the DIP Secured Parties to deliver an Enforcement Notice (as defined below) in accordance with the terms of the DIP Loan Documents and this Interim Order.

12. **Disposition of DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Administrative Agent under the DIP Loan Documents (and no such consent shall be implied from any other action, inaction or acquiescence by any DIP Secured Party or any order of this Bankruptcy Court), except for sales of inventory in the ordinary course of business or except as otherwise permitted in the DIP Loan Documents and this Interim Order and approved by the Bankruptcy Court to the extent required under applicable bankruptcy law. Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral outside the ordinary course of business shall be remitted to the DIP Administrative Agent until Payment in Full of the DIP Obligations in accordance with the terms of the DIP Loan Documents. Proceeds from the sale of any DIP Collateral in the ordinary course of business shall be promptly deposited into one or more Cash Collection Accounts.

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document    Page 29 of 44

13.     **Events of Default**.

(a)     <u>Rights and Remedies Upon Event of Default</u>.  Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of the Bankruptcy Court, to the extent necessary to permit the DIP Secured Parties to exercise (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under this Interim Order and the DIP Loan Documents, other than those rights and remedies against the DIP Collateral as provided in clause (ii) below, including, without limitation, seeking appointment of a chapter 11 trustee, chief restructuring officer or other responsible person to act on behalf of any of the Debtors (and the Debtors agree not to oppose any such appointment) and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of three business days' prior written notice (the "**<u>Enforcement Notice</u>**") to the Debtors (with a copy to the United States Trustee, the respective lead counsel to any Committee, and counsel for the Prepetition First Lien Lender), all rights and remedies against the DIP Collateral provided for in any DIP Loan Documents or applicable law including, without limitation, the right to enforce the DIP Liens through state law foreclosure proceedings; <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary in clause (ii) above, immediately following the giving of an Enforcement Notice by the DIP Administrative Agent any obligation otherwise imposed on any of the DIP Secured Parties to provide any loan or other financial accommodation to the Debtors pursuant to the DIP Facility (other than to permit the Debtors to use Cash Collateral in accordance with the Budget) shall immediately be suspended.  Following the giving of an Enforcement Notice by the DIP Administrative Agent, the Debtors and any Committee shall be entitled to an emergency hearing before the Bankruptcy Court; <u>provided</u>, <u>however,</u> that any such emergency hearing shall be limited to the issue of whether or not an Event of Default has occurred,

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document    Page 30 of 44

and the Debtors shall not have any right to contest whether or not the automatic stay shall be lifted or modified as provided herein or the DIP Loan Documents. Upon entry of the Final Order, neither any Committee nor the Debtors shall have any right to contest whether or not the automatic stay shall be lifted or modified as provided herein or the DIP Loan Documents. Subject to any order of the Bankruptcy Court that is entered during such three business-day period, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b) Subject to the provisions of Paragraph 13(a), upon the occurrence of an Event of Default, the DIP Administrative Agent and the other DIP Secured Parties are authorized to exercise their rights and remedies and to proceed against any or all of the DIP Collateral under or pursuant to the DIP Loan Documents, this Interim Order and applicable law, including without limitation, exercising any of the Debtors' rights with respect to any of the Debtors' equity interests in any subsidiaries and any of the Debtors' interests in leaseholds, including without limitation, selling, leasing or otherwise transferring any of the Debtors' interests in any subsidiary or leasehold notwithstanding any contractual provision that would otherwise prohibit, restrict, condition or delay any or all of the DIP Secured Parties from taking any such action. All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties shall be turned over to the DIP Administrative Agent until indefeasible Payment in Full of the DIP Obligations in accordance with the terms of the DIP Loan Documents; provided, that in the event of the liquidation of any of the Debtors' estates after an Event of Default, the unused amount of the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from Cash Collateral received by the DIP Administrative Agent prior to the distribution of any such Cash Collateral to any other parties in interest.

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document    Page 31 of 44

(c)     Subject to the limitations in this Paragraph 13, the automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition First Lien Lender under the DIP Loan Documents, the DIP Facility, and this Interim Order, (ii) authorize the DIP Secured Parties, to retain and apply payments hereunder, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

14.     **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary, no proceeds from the DIP Facility, DIP Collateral, Cash Collateral or proceeds thereof, or any portion of the Carve-Out may be used by any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, or any other person, party or entity to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authorization to obtain post-petition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than (i) from the DIP Secured Parties or (ii) with the express written consent of the DIP Administrative Agent; (b) investigate, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any Claims and Defenses, any Avoidance Actions or other actions arising under chapter 5 or section 724(a) of the Bankruptcy Code; (ii) any

32

so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity, enforceability, priority and extent of the DIP Obligations, or the validity, extent, and priority of the DIP Liens, (or the value of any of the DIP Collateral); (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens or the other DIP Protections; (v) any action seeking, or having the effect of, preventing, hindering or otherwise delaying any or all of the DIP Secured Parties' assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents or this Interim Order; and/or (vi) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties hereunder or under the DIP Loan Documents.

15.     **Proofs of Claim**.  The DIP Secured Parties shall not be required to file proofs of claim evidencing the DIP Obligations or the DIP Protections, in the Chapter 11 Cases or in any Successor Case.

16.     **Preservation of Rights Granted under the Order**.

(a)     <u>No Non-Consensual Modification or Extension of Interim Order</u>.  Unless all DIP Obligations shall have been indefeasibly been Paid in Full, the Debtors shall not seek, and it shall constitute an Event of Default (resulting, among other things, in the termination of the Debtors' right to use Cash Collateral), if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Interim Order or (ii) an order converting or dismissing any of the Chapter 11 Cases, in each case, without the prior written consent of the DIP Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence.

(b)     <u>Dismissal</u>.  If any order dismissing any of the Chapter 11 Cases (under section 1112 of the Bankruptcy Code or otherwise) is at any time entered, (i) such order shall have no effect on the DIP Protections, and the DIP Protections shall continue in full force and effect

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document      Page 33 of 44

and shall maintain their priorities as provided in this Interim Order until all DIP Obligations have been indefeasibly Paid in Full, and all DIP Protections, shall, notwithstanding such dismissal, remain binding on all parties in interest, and (ii) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections.

(c)     <u>Modification of Interim Order</u>.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed by a subsequent order of the Bankruptcy Court or any other court, the DIP Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur or stay shall affect (i) the validity, priority or enforceability of any DIP Protections granted or incurred prior to the actual receipt of written notice by the DIP Administrative Agent of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any Lien or priority authorized or created hereby or pursuant to the DIP Loan Documents.  Notwithstanding any such reversal, modification, vacatur or stay, any DIP Protections incurred or granted by any of the Debtors prior to the actual receipt of written notice by the DIP Administrative Agent of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the DIP Protections and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Loan Documents.

(d)     <u>Survival of Interim Order</u>.  The provisions of this Interim Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, all of the DIP Protections, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all

34

of the DIP Secured Parties shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization in any of the Chapter 11 Cases, converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, withdrawing of the reference of any of the Chapter 11 Cases or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in the Bankruptcy Court, or by any other act or omission. The terms and provisions of this Interim Order, including all of the DIP Protections, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this Interim Order. The DIP Obligations shall not be discharged by the entry of an order confirming any chapter 11 plan in any of the Chapter 11 Cases, each Debtor having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

17. **Other Rights and Obligations**.

(a)    Expenses. As provided in the DIP Loan Documents, the Debtors will pay all reasonable expenses incurred by the DIP Administrative Agent (including, without limitation, the reasonable fees and disbursements of all counsel and financial advisors for the DIP Administrative Agent) in connection with the preparation, execution, delivery and administration of the DIP Loan Documents, this Interim Order, any Final Order and any other agreements, instruments, pleadings or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated. Notwithstanding anything contained in the DIP Loan Documents, and without limiting the foregoing, upon entry of the Interim Order, the DIP Lender may use the

Case 4:17-bk-03351-SHG    Doc 49    Filed 04/07/17    Entered 04/07/17 13:10:33    Desc
Main Document    Page 35 of 44

Lender Advances (as such term is defined in the DIP Loan Documents) to satisfy fees and costs of the Lender Professionals (as defined below) incurred or to be incurred through closing of the DIP Loan, including fees and costs incurred prior to the Petition Date. Except as set forth in this paragraph, payment of such fees shall not be subject to allowance by the Bankruptcy Court. Professionals for the DIP Administrative Agent ("**Lender Professionals**") shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to the Bankruptcy Court. Copies of invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the U.S. Trustee, counsel for any Committee, and such other parties as the Bankruptcy Court may direct. If the Debtors, U.S. Trustee or counsel for any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within 10 days of receipt of such invoices, the Debtors, U.S. Trustee or the Committee, as the case may be, shall file and serve on such Lender Professionals an objection with the Bankruptcy Court (the "**Fee Objection**") limited to the issue of reasonableness of such fees and expenses. The Debtors shall timely pay the Lender Professionals' invoices after the expiration of the ten (10) day notice period if no Fee Objection is received in such ten (10) day period. If a Fee Objection is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Bankruptcy Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

(b) <u>Binding Effect</u>. The provisions of this Interim Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Secured Parties, the Prepetition First Lien Lender, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors' estates, an examiner

36

appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Chapter 11 Cases, in any Successor Case, or upon dismissal of any of the Chapter 11 Cases or any such Successor Case; provided, however, that the DIP Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estate of any of the Debtors in the Chapter 11 Cases or any Successor Case.

(c)     No Waiver.  Neither the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any DIP Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with any of the Debtors to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of any of the Debtors to contest such assertion).  Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, to (i) request conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissal of any of the Chapter 11 Cases, or the appointment of a trustee in any of the Chapter 11 Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan with respect to any of the

37

Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties.

(d)     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.   In determining to make any loan or financial accommodation (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties shall not (i) be deemed to be in control of the operations of any of the Debtors, or (ii) owe any fiduciary duty to any of the Debtors, their respective creditors, equity holders or estates.

(e)     No Marshaling.  None of the DIP Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

(f)     Amendments.  The Debtors are authorized and empowered, without further notice and hearing or approval of the Bankruptcy Court, to amend, modify, supplement or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of the DIP Lender in respect of the DIP Facility, (iii) changes the Maturity Date (under and as defined in the DIP Credit Agreement) or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default.  No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of all

38

the Debtors, the DIP Administrative Agent, and, except as provided herein, approved by the Bankruptcy Court.

(g)     Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(h)     Enforceability.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(i)     Preservation of Claims and Causes of Actions.  Nothing in this Interim Order shall constitute a release or waiver of any claims, causes of action, or rights against any party, individual, or entity, except for the waivers of the DIP Lender contained herein or the DIP Loan Documents.

(j)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

18.     **Final Hearing**.

(a)     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility will be held on April 27, 2017, at 2:00 p.m. (Mountain Standard Time), before the Hon. Scott H. Gan, at the United States Bankruptcy Court, 38 S. Scott Avenue, Courtroom 329,

Tucson, Arizona. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by the Bankruptcy Court.

(b)     Final Hearing Notice. Within one (1) business day of entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the **"Final Hearing Notice"**) and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with the Bankruptcy Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than April 20, 2017 (provided, however, that any Committee shall have until April 21, 2017), which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors, Forrester & Worth, PLLC, 3636 N. Central Avenue, Suite 700, Phoenix, Arizona 85012, Attn: S. Cary Forrester; (b) counsel for the DIP Administrative Agent, Gibson, Dunn & Crutcher, LLP, 333 S. Grand Ave., Los Angeles, California 90071, Attn: Samuel A. Newman; and Squire Patton Boggs, 1 E. Washington St., Suite 2700, Phoenix, Arizona 85004, Attn: Kelly Singer; (c) counsel to the Prepetition First Lien Lender, (d) counsel to any Committee; and (e) the Office of the United States Trustee for the District of Arizona and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Arizona, in each case to allow actual receipt of the foregoing no later than April 20, 2017 (provided, however, that any Committee shall have until April 21, 2017), at 5:00 p.m. (Mountain Standard Time).

(c) <u>Retention of Jurisdiction</u>. The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

41

# SCHEDULE 6.02

## PERMITTED SENIOR LIENS

| Company/Subsidiary | Name of Holder of Lien/Encumbrance |
|---|---|
| Green Valley Hospital, LLC and GV Hospital Management, LLC | Artemis Realty Capital Advisor, LLC<br><br>Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, dated September 29, 2016, recorded September 29, 2016, as Sequence No. 20162730816, Official Records of Pima County, Arizona |
| Green Valley Hospital, LLC and GV Hospital Management, LLC | Artemis Realty Capital Advisor, LLC<br><br>Absolute Assignment of Leases and Rents, dated September 29, 2016, recorded September 29, 2016, as Sequence No. 20162730817, Official Records of Pima County, Arizona |
| Green Valley Hospital, LLC, and GV Hospital Management, LLC | Artemis Realty Capital Advisors, LLC<br><br>Assignment of Plans, Specifications and Contracts, dated September 29, 2016, recorded September 29, 2016 as Sequence No. 20162730818, Official Records of Pima County, Arizona |
| Green Valley Hospital, LLC, and GV Hospital Management, LLC | Artemis Realty Capital Advisors, LLC<br><br>Collateral Assignment of Declarant's Rights, dated September 29, 2016, recorded September 29, 2016 as Sequence No. 20162730819, Official Records of Pima County, Arizona |
| Green Valley Hospital, LLC and GV Hospital Management, | Artemis Realty Capital Advisor, LLC<br><br>Security Agreement dated September 29, 2016 |
| Green Valley Hospital, LLC | Artemis Realty Capital Advisors, LLC<br><br>Pledge Agreement and Proxy, dated February 20, 2017, wherein Green Valley Hospital, LLC pledges all of its membership interest in GV Hospital Management, LLC, as security for the Loan. |
| Green Valley Hospital, LLC, and GV Hospital Management, LLC | Artemis Realty Capital Advisors, LLC<br><br>Loan Modification Agreement, dated February 20, 2017 |
| Green Valley Hospital, LLC | Artemis Realty Capital Advisor, LLC<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on October 12, 2016, as File no. 2016-003-6577-1 |

| | |
|---|---|
| GV Hospital Management, LLC | Artemis Realty Capital Advisors, LLC<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on March 16, 2017, as File No. 2017-001-0533-0 |
| GV II Holdings, LLC | SQN Asset Finance (Guernsey) Limited<br><br>Deed of Trust and Fixture Filing (With Assignment of Rents and Security Agreement) dated February 3, 2015, recorded July 1, 2015, as Sequence No. 20151820597, Official Records of Pima County, Arizona |
| GV II Holdings, LLC | SQN Asset Finance (Guernsey) Limited<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on February 5, 2015, as File no. 2015-000-4769-0 |
| Green Valley Hospital, LLC | SQN Asset Finance (Guernsey) Limited<br><br>Security Agreement dated February 3, 2015 |
| Green Valley Hospital, LLC | SQN Asset Finance (Guernsey) Limited<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on February 5, 2015, as File no. 2015-000-4766-1<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on February 5, 2015, as File no. 2015-000-4768-8 |
| Green Valley Hospital, LLC | GE Healthcare<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on March 3, 2015, as File no. 2015-000-7562-9<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on March 20, 2015, as File no. 2015-000-9716-0<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on April 1, 2015, as File no. 2015-001-1201-3 |
| Green Valley Hospital, LLC | Med One Capital Funding, LLC<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on April 10, 2015, as File no. 2015-001-2684-7 |
| Green Valley Hospital, LLC | Creekridge Capital LLC<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on September 1, 2015, as File no. 2015-002-9926-3 |
| Green Valley Hospital, LLC | NSF Leasing, Inc. |

| | |
|---|---|
| | UCC-1 Financing Statement filed with the Arizona Secretary of State on September 9, 2015, as File no. 2015-003-1033-5 |
| Green Valley Hospital, LLC | US Bank Equipment Finance<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on November 10, 2015, as File no. 2015-003-8320-6 |
| Green Valley Hospital, LLC | NSF Leasing, Inc. and People's United Bank<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on March 15, 2016, as File no. 2016-000-9907-4<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on March 15, 2016, as File no. 2016-000-9909-0 |
| Green Valley Hospital, LLC | Olympus America Inc.<br><br>UCC-1 Financing Statement filed with the Arizona Secretary of State on May 27, 2016, as File no. 2016-001-9340-2 |