**FORRESTER & WORTH, PLLC**

3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012
602.258.2729 — MAIN
602.271.4300 — FAX
S. CARY FORRESTER (006342)
JOHN R. WORTH (012950)
SCF@FORRESTERANDWORTH.COM
JRW@FORRESTERANDWORTH.COM

COUNSEL FOR THE DEBTOR

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| **GV HOSPITAL MANAGEMENT, LLC**, | Jointly Administered |
| Debtor. | Case Nos.: 4:17-bk-03351 |
| | 4:17-bk-03353; and |
| In re: | 4:17-bk-03354 |
| **GREEN VALLEY HOSPITAL, LLC**, | |
| Debtor. | **DEBTOR'S SECOND EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PREPETITION CRITICAL VENDORS** |
| In re: | |
| **GV II HOLDINGS, LLC,** | |
| Debtor. | |
| THIS FILING APPLIES TO: | Hearing Date: |
| ☐ ALL DEBTORS | Hearing Time: |
| ☐ GREEN VALLEY HOSPITAL, LLC | Location: Courtroom No. 329 |
| ☒ GV HOSPITAL MANAGEMENT, LLC | Video conference available in Phoenix Courtroom 301 |
| ☐ GVII HOLDINGS, LLC | |

Debtor GV Hospital Management, LLC hereby moves the Court for an order authorizing, but not requiring, it to honor its prepetition repayment obligations to the following critical vendors: (1) Noridian Healthcare Solutions/Centers as agent for Medicare & Medicaid Services ("**CMS**") (monthly payments of $32,440.48; (2) AFCO Premium Credit LLC ("**AFCO**") (one payment of $14,474.60); (3) Hospitalists Drs. Shaikh, Taggarse, and Shah (the "**Hospitalists**") (one payment to each totaling $40,720.00); (4) Joe Fote, Director of Revenue Cycle Management (one payment of $8,087.09); (5) Top Echelon Contracting (one payment of $14,764.44); (6) NRC (one payment of $2,126); and (7) Dr. Prasad, Laboratory Director ($10,000 per month). These payments total $122,612.61 in the first month. Payments to CMS will continue for the foreseeable future, while payments to Dr. Prasad will continue for approximately six months. These payments are provided for in Debtor's budget. This Motion is supported by the following Memorandum of Points and Authorities, the attached Declaration of John Matuska (the "**Matuska Declaration**"), and the entire record before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Bankruptcy Code §§ 105(a) and 363(b), Bankruptcy Rules 6003 and 6004, and Local Bankruptcy Rule 4001-4.

## II.     BACKGROUND

On April 3, 2017 ("**Petition Date**"), Debtor filed its voluntary petition for relief under Chapter 11, Title 11 of the United States Code ("**Bankruptcy Code**"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, Debtor is managing its assets and properties as debtor-in-possession.

Debtor owns and operates the Green Valley Hospital (the "**Hospital**"), a licensed general acute care hospital. It is the only hospital in its local market, serving a community of approximately 100,000 people (including the city and surrounding region), with the next closest hospital facility located 26 miles to the north, or a 45-minute drive away. It currently has approximately 337 employees and has credentialed over 232 physicians on its medical staff.

## III.     THE NEED FOR THE REQUESTED RELIEF.

In addition to the two critical vendors identified in Debtor's first *Motion for Order Authorizing Payment of Prepetition Critical Vendor Claims* [DE 009], Debtor has now identified seven more vendors whose prepetition claims, or a portion of them, must be paid in order to allow it to successfully reorganize. Those vendors are identified as follows:

1.     **CMS**. In 2016, Medicare assessed Debtor with an overpayment of approximately $1,540,109.90. Medicare had the right to recoup that amount from future payments, which would have had a devastating effect on Debtor's cash flow. To avoid that, on July 26, 2016, Debtor entered into an Extended Repayment Schedule (the "**ERS**") with CMS, under which it agreed to make monthly payments of $32,440.48 through May 31, 2021. A copy of the ERS is attached to the Matuska Declaration as Exhibit 1. If Debtor does not honor the ERS, Medicare may recoup the full amount of the overpayment from future

payments, putting a $1.5 million hole in Debtor's cash flow. Accordingly, it is imperative that Debtor be authorized to honor the ERS.

2. **AFCO.** On April 18, 2016, Debtor entered into a premium finance agreement with AFCO pursuant to which it financed $170,279.78 in property insurance policies with a one-year term expiring on May 1, 2017. Debtor has made all but one payment, in the amount of $14,474.60. If the payment is not made, AFCO has the right to terminate the policies and recover the unearned premiums. AFCO has agreed to forbear from exercising that right, or seeking emergency relief from the automatic stay in order to do so, in return for Debtor's agreement to seek court authority to make the last payment. Accordingly, Debtor seeks authority to make the final premium payment to AFCO.

3. **The Hospitalists.** Debtor engages the services of Drs. Shaikh, Taggarse, and Shah as its hospitalists. The function of hospitalists, among other things, is to admit and discharge patients who are treated at the hospital, including those treated by staff physicians. Without the hospitalists, admissions and discharges would come to a standstill, as has happened in the past. Debtor was current with the Hospitalists when this case was filed, but they had not yet submitted their bills for March services. Those bills total $5,320 for Dr. Shaikh, $19,280 for Dr. Taggarse, and $16,120 for Dr. Shah, for a total of $40,720.00. It is imperative that Debtor be authorized to pay these bills in order to retain the services of the Hospitalists and protect its cash flow.

4. **Director of Revenue Cycle Management.** The Court previously authorized Debtor to honor its prepetition obligations to its employees. Unfortunately, that authorization did not extend to independent contractors, such as Debtor's Director of Revenue Cycle Management, Joe Fote, who is owed $8,087.09 for reimbursable out of pocket expenses incurred during the month of March. Mr. Fote has been instrumental in reducing the aging of Debtor's

4

accounts receivable from an average of 64 days to an average of 46 days, and his efforts in that regard are ongoing. In order to retain Mr. Fote's services, Debtor seeks authority to pay him $8,087.09.

5. **Top Echelon Contracting.** Debtor obtained its current Director of IT by contracting with Top Echelon. Debtor's previous director left unexpectedly when he took another job, and Top Echelon was able to provide a replacement on short notice. The position cannot remain unfilled because Medicare requires Debtor to maintain electronic medical records and an electronic billing system, both of which utilize software known as Cerner Community Works. The current Director of IT is familiar with the software and would be difficult to replace. Accordingly, Debtor seeks authority to pay Top Echelon $14,764.44 for prepetition services rendered by the Director of IT.

6. **NRC**. NRC supplies CMS with patient satisfaction information, which is a requirement of Medicare. If this information is not provided to CMS, Debtor's payment rates will be reduced. Accordingly, Debtor seeks approval to pay NCR $2,126 for services rendered in March of 2017.

7. **Dr. Prasad**. Dr. Prasad is Debtor's Laboratory Director. Debtor is required by CLIA and CMS to have a laboratory director in order to be certified, and, given Debtor's circumstances, it would be very hard to obtain a replacement. Dr. Prasad is owed $63,473 for prepetition services, but Debtor is informed that he will accept catch-up payments of $10,000 per month. Accordingly, Debtor seeks authority to pay Dr. Prasad $10,000 per month until the arrearages are fully paid.

## IV. <u>LEGAL ARGUMENT</u>

Under the circumstances of this case, it is both necessary and appropriate for the Court to allow Debtor to honor the prepetition obligations described

5

above. Not only is payment of these obligations justified under Section 105 and the "doctrine of necessity," it is also justified as an exercise of Debtor's business judgment under Section 363(b) of the Bankruptcy Code.

A. **The Court May Rely on its General Equitable Powers to Grant this Motion.**

11 U.S.C. § 105(a) permits courts to approve immediate payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of its creditors. *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005). The Ninth Circuit Court of Appeals recognized the importance of paying critical vendor claims in appropriate circumstances, stating in dicta in *Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987), "Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as . . . debts to providers of unique and irreplaceable supplies . . . ." 829 F.2d 1484, 1490 (9th Cir. 1987). The rationale acknowledged by the *Adams Apple* court is that a debtor's rehabilitation is the paramount policy and goal of Chapter 11. *Adams Apple* at 1490.

Many courts have permitted postpetition payment of prepetition claims under Section 105(a) where nonpayment would trigger a withholding of goods or services essential to the reorganization. *See In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (reversed on other grounds by *In re UNR Indus., Inc.*, 173 B.R. 149 (N.D. Ill. 1994); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987). Thus, Section 105(a) permits a court to authorize pre-plan payment of prepetition obligations when essential to the debtor's reorganization, as is the case here. As such, the Motion should be granted.

6

## B. The Court May Rely on Section 363(b) of the Bankruptcy Code to Grant This Motion.

The Court may also authorize Debtor to pay the critical vendors under Section 363(b) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition wages pursuant to Section 363(b) of the Bankruptcy Code). *In re UAL Corp.*, 2002 WL 34344254, at *1 (Bankr. N.D. Ill. 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-ordinary-course transaction); *Tropical Sportswear*, 320 B.R. at 20 ("Bankruptcy courts recognize that section 363 is a source of authority to make critical vendor payments . . .").

In order to pay critical vendor claims under Section 363(b), "the debtor must articulate some business justification, other than mere appeasement of major creditors." *Ionosphere*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of prepetition wages). Debtor's request to pay the critical vendors meets this standard because the failure to pay their prepetition claims would result in lost revenue far exceeding the amounts to be paid. Accordingly, the Motion should be granted.

## C. The Court Can and Should Waive Application of Bankruptcy Rules 6003 and 6004(h).

Under Bankruptcy Rule 6003(b), the Court may not grant a motion to pay a prepetition obligation of the estate made in the first 21 days after the filing unless it is necessary to avoid immediate and irreparable harm. Because the relief requested in this Motion is necessary to avoid immediate and irreparable harm,

the requirements of Rule 6003(b) have been satisfied and the requested relief should be granted immediately. In addition, and for the same reason, the Court should waive the notice requirement of Bankruptcy Rule 6004(a) and the 14-day stay of Bankruptcy Rule 6004(h), to the extent applicable (the rules apply only to motions to use, sell, or lease estate property outside of the ordinary course of business).

## V.    RESERVATION OF RIGHTS

Nothing contained in this Motion is, or should be construed as, (a) an admission as to the validity of any claim against Debtor; (b) a waiver of Debtor's right to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code Section 365; or (e) otherwise affecting Debtor's rights under Bankruptcy Code Section 365 to assume or reject any executory contract with any party subject to this Motion.

## VI.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, Debtor respectfully requests that the Court enter an order authorizing, but not requiring, it to honor its prepetition repayment obligations to critical vendors identified above.

Dated April 13, 2017.

FORRESTER & WORTH, PLLC


/s/ SCF (006342)
S. Cary Forrester
John R. Worth
Counsel for the Debtor

Copy of the foregoing emailed or
mailed on April 13, 2017, to the
following:

Dean Dinner
Nussbaum Gillis Dinner
14850 N. Scottsdale Rd. #450
Scottsdale AZ 85254
ddinner@ngdlaw.com

Genevieve G. Weiner
Samuel A. Newman
Gibson Dunn & Crutcher LLP
333 S Grand Ave.
Los Angeles CA 90071-3197
GWeiner@gibsondunn.com
SNewman@gibsondunn.com

Larry Watson
Office of the U.S. Trustee
230 N. Central Ave. #204
Phoenix, AZ 85003
larry.watson@usdoj.gov

Robert A. Shull
William Novotny
Dickinson Wright PLLC
1850 N. Central Ave. # 1400
Phoenix AZ 85004
RShull@dickinsonwright.com
wnovotny@dickinsonwright.com

Steven Berger
Patrick Clisham
Engelman Berger P.C.
3636 N Central Ave. #700
Phoenix AZ 85012
snb@eblawyers.com
pac@eblawyers.com

Steven D. Jerome
Snell & Wilmer
One Arizona Center
400 E Van Buren
Phoenix AZ 85004-2202
sjerome@swlaw.com

Jonathan M. Saffer
Jill H. Perrella
SNELL & WILMER L.L.P.
1 S. Church Ave. #1500
Tucson, AZ 85701-1630
jmsaffer@swlaw.com
jperrella@swlaw.com

Susan Freeman
Robert Charles
Lewis Roca Rothgerber Christie LLP
201 E. Washington Street, Suite 1200
Phoenix, AZ 85004
sfreeman@lrrc.com
rcharles@lrrc.com

Kelly Singer
Squire Patton Boggs (US) LP
1 East Washington, Suite 2700
Phoenix AZ 85004-4498
Kelly.singer@gibsondunn.com

Jody A. Corrales, Esq.
Deconcini McDonald Yetwin & Lacy, P.C.
2525 E. Broadway Blvd., Suite 200
Tucson, Arizona 85716-5300
jcorrales@dmyl.com

Alisa Lacey
Stinson Leonard Street LLP
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Alisa.lacey@stinsonleonard.com

Michael R. Johnson (Az. Bar No. 15829)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
mjohnson@rqn.com

Julia L. Matter
Pima County Attorney's Office, Civil Division
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Julia.Matter@pcao.pima.gov
pcaocvbk@pcao.pima.gov

Law Offices Of K. Kenneth Kotler
K. Kenneth Kotler
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
kotler@kenkotler.com

Lori Purkey, Esq.
Purkey & Associates, PLC
5050 Cascade Rd., SE, Ste. A
Grand Rapids, MI 49546
purkey@purkeyandassociates.com

/s/ Matthew Burns
Matthew Burns

**FORRESTER & WORTH, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012
602.258.2729 — MAIN
602.271.4300 — FAX
S. CARY FORRESTER (006342)
JOHN R. WORTH (012950)
SCF@FORRESTERANDWORTH.COM
JRW@FORRESTERANDWORTH.COM

COUNSEL FOR THE DEBTOR

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GV Hospital Management, LLC,<br><br>                           Debtor. | Chapter 11<br><br>Jointly Administered<br><br>Case Nos.: 4:17-bk-03351<br>                  4:17-bk-03353; and<br>                  4:17-bk-03354 |
| In re:<br><br>Green Valley Hospital, LLC,<br><br>                           Debtor. | |
| In re:<br><br>GV II Holdings, LLC,<br><br>                           Debtor. | **DECLARATION OF JOHN MATUSKA IN SUPPORT OF DEBTOR'S SECOND EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PREPETITION CRITICAL VENDOR CLAIMS** |
| This Filing Applies to:<br><br>☐ ALL Debtors<br><br>☐ Green Valley Hospital, LLC<br><br>☒ GV Hospital Management, LLC<br><br>☐ GVII Holdings, LLC | |

John Matuska hereby declares under penalty of perjury as follows:

1.    I am the Chief Executive Officer of GV Hospital Management ('**Debtor**"), which owns and operates the Green Valley Hospital;

2.    I am over the age of 18, am competent to testify, and if called to do so would testify as set forth in this Declaration;

3.    **CMS**. In 2016, Medicare assessed Debtor with an overpayment of approximately $1,540,109.90. Medicare had the right to recoup that amount from future payments, which would have had a devastating effect on Debtor's cash flow. To avoid that, on July 26, 2016, Debtor entered into an Extended Repayment Schedule (the "**ERS**") with CMS, under which it agreed to make monthly payments of $32,440.48 through May 31, 2021. A copy of the ERS is attached to the Matuska Declaration as Exhibit 1. If Debtor does not honor the ERS, Medicare may recoup the full amount of the overpayment from future payments, putting a $1.5 million hole in Debtor's cash flow.  Accordingly, it is imperative that Debtor be authorized to honor the ERS.

4.    **AFCO**.  On April 18, 2016, Debtor entered into a premium finance agreement with AFCO pursuant to which it financed $170,279.78 in property insurance policies with a one-year term expiring on May 1, 2017. Debtor has made all but one payment, in the amount of $14,474.60. If the payment is not made, AFCO has the right to terminate the policies and recover the unearned premiums. AFCO has agreed to forbear from exercising that right, or seeking emergency relief from the automatic stay in order to do so, in return for Debtor's agreement to seek court authority to make the last payment. Accordingly, Debtor seeks authority to make the final premium payment to AFCO.

5.    **The Hospitalists.**  Debtor engages the services of Drs. Shaikh, Taggarse, and Shah as its hospitalists. The function of hospitalists, among other things, is to admit and discharge patients who are treated at the hospital,

including those treated by staff physicians. Without the hospitalists, admissions and discharges would come to a standstill, as has happened in the past. Debtor was current with the Hospitalists when this case was filed, but they had not yet submitted their bills for March services. Those bills total $5,320 for Dr. Shaikh, $19,280 for Dr. Taggarse, and $16,120 for Dr. Shah, for a total of $40,720.00. It is imperative that Debtor be authorized to pay these bills in order to retain the services of the Hospitalists and protect its cash flow.

6. **Director of Revenue Cycle Management**. The Court previously authorized Debtor to honor its prepetition obligations to its employees. Unfortunately, that authorization did not extend to independent contractors, such as Debtor's Director of Revenue Cycle Management, Joe Fote, who is owed $8,087.09 for reimbursable out of pocket expenses incurred during the month of March. Mr. Fote has been instrumental in reducing the aging of Debtor's accounts receivable from an average of 64 days to an average of 46 days, and his efforts in that regard are ongoing. In order to retain Mr. Fote's services, Debtor seeks authority to pay him $8,087.09.

7. **Top Echelon Contracting.** Debtor obtained its current Director of IT by contracting with Top Echelon. Debtor's previous director left unexpectedly when he took another job, and Top Echelon was able to provide a replacement on short notice. The position cannot remain unfilled because Medicare requires Debtor to maintain electronic medical records and an electronic billing system, both of which utilize software known as Cerner Community Works. The current Director of IT is familiar with the software and would be difficult to replace. Accordingly, Debtor seeks authority to pay Top Echelon $14,764.44 for prepetition services rendered by the Director of IT.

8. **NRC**. NRC supplies CMS with patient satisfaction information, which is a requirement of Medicare. If this information is not provided to CMS,

3

Debtor's payment rates will be reduced. Accordingly, Debtor seeks approval to pay NCR $2,126 for services rendered in March of 2017.

9.      **Dr. Prasad.** Dr. Prasad is Debtor's Laboratory Director. Debtor is required by CLIA and CMS to have a laboratory director in order to be certified, and, given Debtor's circumstances, it would be very hard to obtain a replacement. Dr. Prasad is owed $63,473 for prepetition services, but Debtor is informed that he will accept catch-up payments of $10,000 per month. Accordingly, Debtor seeks authority to pay Dr. Prasad $10,000 per month until the arrearages are fully paid.

10.     All of the requested payments are within Debtor's budget.

DATED April 13, 2017

_John Matuska_
John Matuska

# EXHIBIT "1"



July 26, 2016

SARA GHALI, CFO
GREEN VALLEY HOSPITAL
4455 S I-19 FRONTAGE ROAD
GREEN VALLEY AZ 85614

RE:    Extended Repayment Schedule – Approval of Request for
        FYE 12/31/2015 As-Filed Cost Report
        Provider Number: 03-0137

Dear Ms. Ghali:

The Extended Repayment Schedule (ERS) request for Green Valley Hospital has been approved. The terms of the ERS are as follows:

- You were approved for a 60-month ERS.
- The current principal balance of the overpayment is $1,487,225.03.
- There is interest assessed at a rate of 10.00% per CMS Transmittal 266, Change Request 9644, dated April 12, 2016. Interest is assessed on all overpayments.
- A check will be due in our office by the end of each month starting August 31, 2016 and ending May 31, 2021.
- The amount of your payment will be $32,440.48.
- A payment schedule is included with this letter.

Per the Medicare Financial Management Manual, Chapter 4, Section 50, if your facility should have a Medicare subsequent underpayment determined and your extended repayment is not paid in full, it is not automatic that we offset the underpayment against the extended repayment schedule. Should this occur, you will be notified by our office that you have fifteen calendar days following that date of notification to submit a statement (including any pertinent evidence) as to why the underpayment should not be offset. If you do not respond timely, the underpayment will be applied to the ERS.

If you should have any questions regarding this matter, please contact Amanda Martinson at (701) 277-6547 or by email at amanda.martinson@noridian.com.

Sincerely,


    /s/
Heather Arechigo, Audit Team Leader
Provider Audit and Reimbursement
Noridian Healthcare Solutions

Enclosure

cc: Krystal Nguyen, CMS Medicare – by email



|  |  | Amount Due to Medicare: | **1,540,109.00** |  |  |
|  |  | Interest Rate: | **10.000%** |  |  |
|  |  | Months Requested: | **60** |  |  |
|  |  | Payments Due: | end of month |  |  |
|  |  | Date of First Payment: | 8/31/2016 |  |  |

Higals Loan Number: **L1860987**

| Payment Number | Payment Due | Payment | Interest Paid | Amount of Payment applied to Principle | Principle Amount |  |
|---|---|---|---|---|---|---|
| Initial OP |  |  |  |  | 1,540,109.00 |  |
| 1 | 17-Jun-16 | ($32,722.76) | - | ($32,722.76) | 1,507,386.24 | Check 11705 |
| 2 | 14-Jul-16 | ($32,722.76) | 12,561.55 | ($20,161.21) | 1,487,225.03 | Check 11901 |
| 3 | 31-Aug-16 | ($32,440.48) | 12,393.54 | ($20,046.94) | 1,467,178.09 |  |
| 4 | 30-Sep-16 | ($32,440.48) | 12,226.48 | ($20,214.00) | 1,446,964.09 |  |
| 5 | 31-Oct-16 | ($32,440.48) | 12,058.03 | ($20,382.45) | 1,426,581.64 |  |
| 6 | 30-Nov-16 | ($32,440.48) | 11,888.18 | ($20,552.30) | 1,406,029.34 |  |
| 7 | 31-Dec-16 | ($32,440.48) | 11,716.91 | ($20,723.57) | 1,385,305.77 |  |
| 8 | 31-Jan-17 | ($32,440.48) | 11,544.21 | ($20,896.27) | 1,364,409.50 |  |
| 9 | 28-Feb-17 | ($32,440.48) | 11,370.08 | ($21,070.40) | 1,343,339.10 |  |
| 10 | 31-Mar-17 | ($32,440.48) | 11,194.49 | ($21,245.99) | 1,322,093.11 |  |
| 11 | 30-Apr-17 | ($32,440.48) | 11,017.44 | ($21,423.04) | 1,300,670.07 |  |
| 12 | 31-May-17 | ($32,440.48) | 10,838.92 | ($21,601.56) | 1,279,068.51 |  |
| 13 | 30-Jun-17 | ($32,440.48) | 10,658.90 | ($21,781.58) | 1,257,286.93 |  |
| 14 | 31-Jul-17 | ($32,440.48) | 10,477.39 | ($21,963.09) | 1,235,323.84 |  |
| 15 | 31-Aug-17 | ($32,440.48) | 10,294.37 | ($22,146.11) | 1,213,177.73 |  |
| 16 | 30-Sep-17 | ($32,440.48) | 10,109.81 | ($22,330.67) | 1,190,847.06 |  |
| 17 | 31-Oct-17 | ($32,440.48) | 9,923.73 | ($22,516.75) | 1,168,330.31 |  |
| 18 | 30-Nov-17 | ($32,440.48) | 9,736.09 | ($22,704.39) | 1,145,625.92 |  |
| 19 | 31-Dec-17 | ($32,440.48) | 9,546.88 | ($22,893.60) | 1,122,732.32 |  |
| 20 | 31-Jan-18 | ($32,440.48) | 9,356.10 | ($23,084.38) | 1,099,647.94 |  |
| 21 | 28-Feb-18 | ($32,440.48) | 9,163.73 | ($23,276.75) | 1,076,371.19 |  |
| 22 | 31-Mar-18 | ($32,440.48) | 8,969.76 | ($23,470.72) | 1,052,900.47 |  |
| 23 | 30-Apr-18 | ($32,440.48) | 8,774.17 | ($23,666.31) | 1,029,234.16 |  |
| 24 | 31-May-18 | ($32,440.48) | 8,576.95 | ($23,863.53) | 1,005,370.63 |  |
| 25 | 30-Jun-18 | ($32,440.48) | 8,378.09 | ($24,062.39) | 981,308.24 |  |
| 26 | 31-Jul-18 | ($32,440.48) | 8,177.57 | ($24,262.91) | 957,045.33 |  |
| 27 | 31-Aug-18 | ($32,440.48) | 7,975.38 | ($24,465.10) | 932,580.23 |  |
| 28 | 30-Sep-18 | ($32,440.48) | 7,771.50 | ($24,668.98) | 907,911.25 |  |
| 29 | 31-Oct-18 | ($32,440.48) | 7,565.93 | ($24,874.55) | 883,036.70 |  |
| 30 | 30-Nov-18 | ($32,440.48) | 7,358.64 | ($25,081.84) | 857,954.86 |  |
| 31 | 31-Dec-18 | ($32,440.48) | 7,149.62 | ($25,290.86) | 832,664.00 |  |
| 32 | 31-Jan-19 | ($32,440.48) | 6,938.87 | ($25,501.61) | 807,162.39 |  |
| 33 | 28-Feb-19 | ($32,440.48) | 6,726.35 | ($25,714.13) | 781,448.26 |  |
| 34 | 31-Mar-19 | ($32,440.48) | 6,512.07 | ($25,928.41) | 755,519.85 |  |
| 35 | 30-Apr-19 | ($32,440.48) | 6,296.00 | ($26,144.48) | 729,375.37 |  |
| 36 | 31-May-19 | ($32,440.48) | 6,078.13 | ($26,362.35) | 703,013.02 |  |
| 37 | 30-Jun-19 | ($32,440.48) | 5,858.44 | ($26,582.04) | 676,430.98 |  |
| 38 | 31-Jul-19 | ($32,440.48) | 5,636.92 | ($26,803.56) | 649,627.42 |  |
| 39 | 31-Aug-19 | ($32,440.48) | 5,413.56 | ($27,026.92) | 622,600.50 |  |

| Payment Number | Payment Due | Payment | Interest Paid | Amount of Payment applied to Principle | Principle Amount |
|---|---|---|---|---|---|
| 40 | 30-Sep-19 | ($32,440.48) | 5,188.34 | ($27,252.14) | 595,348.36 |
| 41 | 31-Oct-19 | ($32,440.48) | 4,961.24 | ($27,479.24) | 567,869.12 |
| 42 | 30-Nov-19 | ($32,440.48) | 4,732.24 | ($27,708.24) | 540,160.88 |
| 43 | 31-Dec-19 | ($32,440.48) | 4,501.34 | ($27,939.14) | 512,221.74 |
| 44 | 31-Jan-20 | ($32,440.48) | 4,268.51 | ($28,171.97) | 484,049.77 |
| 45 | 29-Feb-20 | ($32,440.48) | 4,033.75 | ($28,406.73) | 455,643.04 |
| 46 | 31-Mar-20 | ($32,440.48) | 3,797.03 | ($28,643.45) | 426,999.59 |
| 47 | 30-Apr-20 | ($32,440.48) | 3,558.33 | ($28,882.15) | 398,117.44 |
| 48 | 31-May-20 | ($32,440.48) | 3,317.65 | ($29,122.83) | 368,994.61 |
| 49 | 30-Jun-20 | ($32,440.48) | 3,074.96 | ($29,365.52) | 339,629.09 |
| 50 | 31-Jul-20 | ($32,440.48) | 2,830.24 | ($29,610.24) | 310,018.85 |
| 51 | 31-Aug-20 | ($32,440.48) | 2,583.49 | ($29,856.99) | 280,161.86 |
| 52 | 30-Sep-20 | ($32,440.48) | 2,334.68 | ($30,105.80) | 250,056.06 |
| 53 | 31-Oct-20 | ($32,440.48) | 2,083.80 | ($30,356.68) | 219,699.38 |
| 54 | 30-Nov-20 | ($32,440.48) | 1,830.83 | ($30,609.65) | 189,089.73 |
| 55 | 31-Dec-20 | ($32,440.48) | 1,575.75 | ($30,864.73) | 158,225.00 |
| 56 | 31-Jan-21 | ($32,440.48) | 1,318.54 | ($31,121.94) | 127,103.06 |
| 57 | 28-Feb-21 | ($32,440.48) | 1,059.19 | ($31,381.29) | 95,721.77 |
| 58 | 31-Mar-21 | ($32,440.48) | 797.68 | ($31,642.80) | 64,078.97 |
| 59 | 30-Apr-21 | ($32,440.48) | 533.99 | ($31,906.49) | 32,172.48 |
| 60 | 31-May-21 | ($32,440.58) | 268.10 | ($32,172.48) | (0.00) |
|  |  | ($1,946,993.46) | $406,884.46 | ($1,540,109.00) | $48,826,138.19 |

Repayment Schedule                                           NHS

EXHIBIT "2"

*3-10 - 129453-3*

*cc Heather*
*hshearer@greenvalleyhospital.com*
*Contr.*

# Commercial Premium Finance Agreement

## AFCO PREMIUM CREDIT LLC

A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.

8885 Rio San Diego Drive, Suite 347, San Diego, CA 92108

TEL. NO. 619-209-5210  800-288-7920

Page 1 of 3

| Agent (Name and Address)  10051740 | Insured (Name and Address as shown on the policy) |
|---|---|
| Marsh & McLennan Agency, LLC<br>7015 College Boulevard, Suite 400<br>Overland Park, KS 66211<br>913-491-1999 | Green Valley Hospital, LLC GV Health<br>Management, LLC dba Green Valley Hospital<br>4455 S. I-19 Frontage Road<br>Green Valley, AZ 85614<br>520-393-4700<br><br>*ATTN: HEATHER SHEARER*<br>*CONTROLLER* |

| A) Total Premiums | B) Down Payment | C) Amount Financed | D) Finance Charge | E) Total Payments |
|---|---|---|---|---|
| $170,279.78 | $14,474.60 | $155,805.18 | $3,415.42 | $159,220.60 |

| F) Annual Percentage Rate | No. of Payments | Amount of Payments | First Installment Due | Installment Due Dates |
|---|---|---|---|---|
| 4.358 % | 11(Monthly) | $14,474.60 | 06/01/2016 | 1st |

## SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Name and Address of General or Policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| TBD | 05/01/2016 | Zurich American Insurance Company | PROP | 12 | 30,613.00 |
| TBD | 05/01/2016 | Zurich American Insurance Company | AUTO | 12 | 1,162.00 |
| TBD | 05/01/2016 | Evanston Insurance Company<br>Swett & Crawford<br>3350 Riverwood Parkway Southeast<br>Suite 1100<br>Atlanta, GA 30339<br>USA<br><br>Policy Detail Continued... | XSLB | 12* | 49,643.00 |

**(1) DEFINITIONS:** The above named insured ("the insured") is the debtor. AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. "Insurance company" or "company", "insurance policy" or "policy" and "premium" refer to those items listed under the "Schedule of Policies". Singular words mean plural and vice-versa as may be required in order to give the Agreement meaning.

**(2) ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.

**(3) LIMITED POWER OF ATTORNEY:** The insured irrevocably appoints AFCO as its attorney in fact with full authority to cancel the insurance policies for the reasons stated in paragraph (15), and to receive all sums assigned to AFCO or in which it has granted AFCO a security interest. AFCO may execute and deliver on the insured's behalf all documents, instruments of payment, forms, and notices of any kind relating to the insurance policies in furtherance of this Agreement.

**INSURED AGREES TO THE TERMS SET FORTH ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT**

*GREEN VALLEY HOSPITAL* X  *T. McDonnell*   *Mgr*   *4/18/16*

INSURED'S NAME | SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE

## AGENT OR BROKER REPRESENTATIONS

The undersigned warrants and agrees: 1. The policies are in full force and effect and the information in the Schedule of Policies and the premiums are correct. 2. The insured has authorized this transaction and recognizes the security interest assigned herein and has received a copy of this Agreement. 3. To hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or AFCO and to pay the monies as well as any unearned commissions to AFCO upon demand to satisfy the outstanding indebtedness of the insured. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinated to AFCO's lien or security interest therein. 4. The policies comply with AFCO's eligibility requirements. 5. No audit or reporting form policies, policies subject to retrospective rating or minimum earned premium are included. The deposit or provisional premiums are not less than anticipated premiums to be earned for the full term of the policies. 6. The policies can be cancelled by the insured and the unearned premiums will be computed on the standard short-rate or pro-rata table. 7. The undersigned represents that a proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named insured.

**IF THERE ARE ANY EXCEPTIONS TO THE ABOVE STATEMENTS PLEASE LIST BELOW:**

*: Subject to Audit

**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

*Marsh & McLennan Agency*   X   *Mary C. Forrest*   *Accounting*   *4/25/16*
*LLP*

AGENT OR BROKER | SIGNATURE OF AGENT OR BROKER | TITLE | DATE

AZJV(10/00-win) c. 2000 Afco Premium Credit LLC    CH-V    100001066525.002

# Commercial Premium Finance Agreement
**AFCO PREMIUM CREDIT LLC**
A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.
8885 Rio San Diego Drive, Suite 347, San Diego, CA 92108
TEL. NO. 619-209-5210  800-288-7920

## SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Name and Address of General or Policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| | | Fee | FEE | NRef | 99.29 |
| | | Tax | TAX | Ref | 1,489.29 |
| TBD | 05/01/2016 | Evanston Insurance Company<br>Swett & Crawford<br>3350 Riverwood Parkway Southeast<br>Suite 1100<br>Atlanta, GA 30339<br>USA | GL/PL | 12 | 62,100.00 |
| | | Fee | FEE | NRef | 124.20 |
| | | Tax | TAX | Ref | 1,863.00 |
| TBD | 05/01/2016 | Beazley Insurance Company Inc.<br>R-T Specialty, LLC<br>Attn: R-T Specialty of Illinois, LLC<br>500 West Monroe, 30th Floor<br>Chicago, IL 60661<br>USA | DO | 6 | 17,539.00 |
| 8246718 | 05/01/2016 | Federal Insurance Company | CRIM | 12 | 5,647.00 |

AZJV(10/00-win) c. 2000 Afco Premium Credit LLC          QIV#  100001066525.002

**(4) PROMISE OF PAYMENT:** The insured requests that AFCO pay the premiums in the Schedule of Policies. The insured promises to pay to AFCO the amount stated in Block E above according to the payment schedule, subject to the remaining terms of this Agreement.

**(5) SECURITY INTEREST:** The insured assigns to AFCO as security for the total amount payable in this Agreement any and all unearned premiums and dividends which may become payable under the insurance policies for whatever reason and loss payments which reduce the unearned premiums subject to any mortgagee or loss payee interests. The insured gives to AFCO a security interest in all items mentioned in this paragraph. The insured further grants to AFCO its interest which may arise under any state insurance guarantee fund relating to any policy shown in the Schedule of Policies.

**(6) WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the Schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The insured authorizes AFCO to insert or correct on this Agreement, if omitted or incorrect, the insurer's name, the policy numbers, and the due date of the first installment. AFCO is permitted to correct any obvious errors. In the event of any change or insertion, AFCO will give the insured written notice of those changes or corrections made in accordance with this provision.

**(7) REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.

**(8) ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.

**(9) SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or is subject to retrospective rating, then the insured promises to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

**(10) NAMED INSURED:** If the insurance policy provides that the first named insured in the policy shall be responsible for payment of premiums and shall act on behalf of all other insureds with respect to any actions relating to the policy, then the same shall apply to this Agreement. If such is not the case, then all insureds' names must be shown on this Agreement unless a separate agreement specifies one insured to act in all matters for the others.

**(11) FINANCE CHARGE:** The finance charge shown in Block D begins to accrue as of the earliest policy effective date unless otherwise indicated in the Schedule of Policies. Interest will be calculated on a daily basis. Each day shall count as 1/360th of a year.

**(12) AGREEMENT BECOMES A CONTRACT:** This Agreement becomes a binding contract when AFCO mails a written acceptance to the insured.

**(13) DEFAULT CHARGES:** If the insured is late in making an installment payment to AFCO by more than the number of days specified by law the insured will pay to AFCO a delinquency charge not to exceed the maximum charge permitted by law.

**(14) DISHONORED CHECK:** If an insured's check is dishonored for any reason and if permitted by law, the insured will pay to AFCO a fee for expenses in processing that check not to exceed the amount permitted by law.

**(15) CANCELLATION:** AFCO may cancel the insurance policies after giving any required statutory notice and the unpaid balance due to AFCO shall be immediately payable by the insured if the insured does not pay any installment according to the terms of this Agreement. AFCO at its option may enforce payment of this debt without recourse to the security given to AFCO. If cancellation occurs, the borrower agrees to pay a finance charge on the balance due at the contract rate of interest until that balance is paid in full or until such other date as required by law.

**(16) CANCELLATION CHARGES:** If AFCO cancels any insurance policy in accordance with the terms of this Agreement, then the insured will pay AFCO a cancellation charge, if permitted, up to the limit specified by law.

**(17) MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's notice of cancellation of the insurance policy has been mailed may be credited to the insured's account without affecting the acceleration of this Agreement and without any liability or obligation on AFCO's part to request reinstatement of a cancelled insurance policy. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to whomever is entitled to the money. No refund of less the $1.00 shall be made. In the event that AFCO does request, on the insured's behalf, a reinstatement of the policy, such request does not guarantee that coverage under the policy will be reinstated or continued.

**(18) ATTORNEY FEES - COLLECTION EXPENSE:** If, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay reasonable attorney fees and costs including those in the course of appeal as well as other expenses, as permitted by law or granted by the court.

**(19) REFUND CREDITS:** The insured will receive a refund credit of the finance charge if the account is voluntarily prepaid in full prior to the last installment due date as required or permitted by law. Any minimum or fully earned fees will be deducted as permitted by law.

**(20) INSURANCE AGENT OR BROKER:** The insurance agent or broker named in this Agreement is the insured's agent, not AFCO's, and AFCO is not legally bound by anything the agent or broker represents to the insured orally or in writing.

**(21) NOT A CONDITION OF OBTAINING INSURANCE:** This Agreement is not required as a condition of the insured obtaining insurance coverage.

**(22) SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured will not assign the policies without AFCO's written consent except for the interest of mortgagees and loss payees.

**(23) LIMITATION OF LIABILITY:** The insured agrees that AFCO's liability for breach of any of the terms of this Agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding except in the event of gross negligence or willful misconduct.

**(24) ENTIRE DOCUMENT- GOVERNING LAW:** This document is the entire Agreement between AFCO and the insured and can only be changed in writing and signed by both parties except as stated in paragraph (6). The laws of the state indicated in the insured's address as set forth in the Schedule will govern this Agreement unless stated in that Schedule.

AZJV (10/00-win) c. 2000 Afco Premium Credit LLC

INSURED'S INITIALS



**AFCO** 4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901
Fax: 913-491-3912

**INSURED :**    Green Valley Hospital, LLC  GV Hospital
**ACCT. NO. :**    31-10-129453-3

## INVOICE COLLECTION RECORD

| DATE | TYPE OF PAYMENT | CHARGE | CREDIT | BALANCE |
|------|----------------|--------|--------|---------|
| 05/11/2016 | Total Premium | 170,279.78 | | 170,279.78 |
| 05/11/2016 | Finance Charge | 3,415.42 | | 173,695.20 |
| 05/11/2016 | Down Payment | | 14,474.60 | 159,220.60 |
| 06/06/2016 | Assess_Late_Charge | 723.73 | | 159,944.33 |
| 06/15/2016 | Payment - June | | 14,474.60 | 145,469.73 |
| 07/06/2016 | Assess_Late_Charge | 723.73 | | 146,193.46 |
| 07/13/2016 | Payment - July | | 14,474.60 | 131,718.86 |
| 08/08/2016 | Assess_Late_Charge | 723.73 | | 132,442.59 |
| 08/12/2016 | Payment - August | | 14,474.60 | 117,967.99 |
| 09/06/2016 | Assess_Late_Charge | 723.73 | | 118,691.72 |
| 09/09/2016 | Payment - September | | 16,645.79 | 102,045.93 |
| 10/06/2016 | Assess_Late_Charge | 723.73 | | 102,769.66 |
| 10/10/2016 | Payment - October | | 15,198.33 | 87,571.33 |
| 11/07/2016 | Assess_Late_Charge | 723.73 | | 88,295.06 |
| 11/14/2016 | Payment - November | | 15,198.33 | 73,096.73 |
| 12/06/2016 | Assess_Late_Charge | 723.73 | | 73,820.46 |
| 12/12/2016 | Payment - December | | 14,474.60 | 59,345.86 |
| 01/06/2017 | Assess_Late_Charge | 723.73 | | 60,069.59 |
| 01/18/2017 | Payment - January | | 16,645.79 | 43,423.80 |
| 02/01/2017 | Payment - February | | 14,474.60 | 28,949.20 |



**_AFCO_** 4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901
Fax: 913-491-3912

**INSURED :**    Green Valley Hospital, LLC  GV Hospital

**ACCT. NO. :**    31-10-129453-3

## INVOICE COLLECTION RECORD

| DATE | TYPE OF PAYMENT | CHARGE | CREDIT | BALANCE |
|------|-----------------|--------|--------|---------|
| 03/06/2017 | Payment - March | | 14,474.60 | 14,474.60 |