ILENE J. LASHINSKY (#003073)
United States Trustee
District of Arizona

LARRY L. WATSON (CA BAR No. 193531)
Trial Attorney
230 N. First Ave, Suite 204
Phoenix, Arizona 85003
E-mail: larry.watson@usdoj.gov
(602) 682-2607

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GV HOSPITAL MANAGEMENT, LLC,<br><br>Debtor.<br><br>In re:<br><br>GREEN VALLEY HOSPITAL, LLC,<br><br>Debtor.<br><br>In re:<br><br>GV II HOLDINGS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case Nos. 4:17-bk-03351-SHG<br>4:17-bk-03353-SHG<br>4:17-bk-03354-SHG<br><br>(Jointly Administered under Case No. 4:17-bk-03351-SHG)<br><br>**HEARING DATE: April 27, 2017**<br>**HEARING TIME: 2:00 p.m. (MST)** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION FOR ORDER: (1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §364; (2) GRANTING LIENS AND SUPERPRIORITY CLAIMS PURSUANT TO 11 U.S.C. § 364; (3) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (4) SCHEDULING A FINAL HEARING; AND (5) GRANTING RELATED RELIEF**

1

The United States Trustee for the District of Arizona, Region 14, ("**U.S. Trustee**") by and through counsel, in furtherance of her duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby respectfully submits this objection (the "**Objection**") to the above-captioned debtors ("**Debtors**") *Emergency Ex-Parte Motion for: (1) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §364; (2) Granting Liens and Superpriority Claims Pursuant to 11 U.S.C. §364; (3) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. §363, (4) Scheduling a Final Hearing*; and (5) *Granting Related Relief* (the "**DIP Motion**") and respectfully asserts as follows:

1. Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the oversight of the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the United States Bankruptcy Code ("**Bankruptcy Code**"). Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.2d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

2. On April 3, 2017, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona (the "**Court**"). *See* Court's docket entry number ("**D.E. No.**") **1**.

3. The U. S. Trustee has not yet appointed a statutory committee of unsecured creditors in these cases. The solicitation period for creditors to volunteer to sit on an Official Committee of Unsecured Creditors ("**Committee**") expired on April 17, 2017. However, solicitations are still outstanding at this time. The U.S. Trustee anticipates that her office may be conducting a meeting to consider the formation and appointment of a Committee the week of April 23, 2017.

4. The Debtors are still in the process of filing their required schedules and related statements of financial affairs as of the date of the filing of this Objection.

5. The First Meeting of Creditors has not yet been held and is currently scheduled for May 11, 2017. [D.E. No. **3**]

6. Together with their Petitions, the Debtors filed the present DIP Motion seeking Debtor-in-Possession financing subject to certain terms and conditions in the attached agreement (the "**DIP Facility**") and the entry of an interim order ("**Interim DIP Loan Order**").

7. The U.S. Trustee filed her *Objection and Reservation of Rights* to the DIP Motion raising a number of concerns (the "**UST Interim DIP Loan Objection**"). [D.E. No. **35**]

8. The Court conducted a first day hearing on April 6, 2017, and approved the Interim DIP Loan Order authorizing the funding of the Debtors' operations on an interim basis subject to revised terms and conditions as specified by the Court. [D.E. No. **49**]

# ARGUMENT

## The Final Order Must Be The Determinative Document

We note at the outset that the DIP Motion, the related DIP Facility, and the Interim DIP Loan Order incorporate voluminous documents. Additionally, the documents reference each other. It cannot be overstated that, to the extent the Court grants the objections asserted herein, clarifying paragraphs must be added to the appropriate Final Order clearly stating that, notwithstanding any provisions in that order or any accompanying loan/security document, the Court's determination on any particular issue will govern.

## The Terms Of the DIP Loan Are Not Fair And Reasonable

To obtain post-petition financing under section 364(d) of the Bankruptcy Code, the Debtors must prove that (i) they are unable to obtain unsecured credit; (ii) the proposed credit is necessary to preserve estate assets; and (iii) the terms of the financing are fair, reasonable and adequate. *See In re Ames Dep't Stores*, *Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990). Post-petition financing should only be approved to the extent it is "in the best interests of the general creditor body." *In re Roblin Indus.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985). Financing should not be approved if its primary purpose is to benefit or improve the position of a secured lender. *See In re Aqua Assocs.,* 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) (stating, "credit should not be approved when it is sought for the primary benefit of a party other than the debtor"); *Ames*, 115 B.R. at 39 (stating, "a proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate").

At the end of the day, this DIP Facility supports two outcomes:

1. The Debtors' largest secured creditor, Green Valley Medical Investments, LLLP ("**GVMI**"), will walk away from these bankruptcy proceedings as the owner of the hospital and its related land holdings. Even its attorneys' fees and costs will be funded under the DIP Facility through the $400,000.00 subordination fee. On the other hand, the unsecured creditors who supported the hospital's ongoing operations over the past two years, will be provided a litigation trust comprised of the Article 5 claims with an unknown value and a currently unknown nominal amount of money to attempt to prosecute such claims; or

2. Lateral U.S. Credit Opportunities Fund ("**DIP Lender**") will call a default on the DIP Facility and foreclose on all of the Debtors' assets in six to nine months. Upon foreclosure, the only assets remaining in the estates will be the Article 5 claims with no money to fund the chapter 7 trustee's prosecution of them. Even more importantly, no funds will be available to fund the Patient Care Ombudsman ("**PCO**") in the event that the hospital's operations are impacted and patient care and records are put at risk.

When looked at in the clear light of day, the only two parties that are set to materially benefit from the DIP Facility is GVMI and the DIP Lender. This simply

5

cannot be allowed. But there are mechanisms within the construct of the DIP Facility to address these issues.

First, the subordination fee to GVMI can be re-characterized to benefit the estate and its creditor constituencies as a whole. The $400,000.00 is budgeted to be paid over time during the proceedings to GVMI. Instead, the U.S. Trustee recommends that these funds be placed in a separate unencumbered DIP account and allowed to accrue through the bankruptcy proceedings. In the event that GVMI is successful in achieving a confirmable plan of reorganization, that includes an adequately funded litigation trust approved by the Court for the estates, then the funds can be paid to GVMI upon confirmation. However, in the event that the DIP Lender forecloses on the DIP Facility, the $400,000 shall remain in the estates for a chapter 7 trustee to use to administer the cases, prosecute claims and make distributions to creditors.

Second, the Debtors' assets are currently valued between $30 and $40 million. These are numbers provided by the Debtor and GVMI; not conjured up by the U.S. Trustee. The DIP Facility is $20 million. In other words, the DIP Lender has a 50 – 66 percent loan-to-value ratio on the Debtors' assets. It has virtually no risk of loss in the event it is forced to foreclose on the Debtors' assets. In fact, based upon recent offers, if it was to foreclose, the DIP Lender is looking at a significant profit on the subsequent sale of those same assets to third parties.

Based upon the foregoing, there is no reason why the DIP Lender is requiring the encumbrance of the estates' claims against insiders and non-debtor third parties. In fact, the DIP Lender has stated unequivocally that it had not taken those claims into account

6

when it decided to make this loan. It was only looking to the real assets of the Debtors as collateral. As such, the U.S. Trustee recommends that the DIP Lender leave the Article 5 claims, together with the estates' tort, contract, D&O and other such claims unencumbered by either liens or superpriority claims, and available for the estates to pursue on behalf of the creditor body as a whole.

If GVMI and the DIP Lender agree to make these two changes to the DIP Facility, then it will actually provide a benefit to the creditor body as a whole rather than simply to themselves. Without these concessions in place, the DIP Facility serves to benefit no party other than the DIP Lender and GVMI and it should not be approved by the Court.

**The Carve-Out Provision Needs To Include A Chapter 7 Trustee And PCO**

It is respectfully asserted that the reasonable fees and expenses of a trustee under 11 U.S.C. § 726(b) and a PCO under 11 U.S.C. § 333(a) must be must be included in the DIP Carve Out in any Final Order entered. The risk that these cases pose to creditors and patients in the event of a foreclosure of estate assets is too high not to provide for this protection.

**The Release Provision In The DIP Facility Is Too Broad**

Section 2.19 of the DIP Facility, titled "Release", provides a broad, open-ended, wide reaching release provision for the benefit of each Lender participating in the proposed loan. That part is fine. But it appears to also seek the release of the respective past and present officers, directors, servants, agents, attorneys, assigns, heirs, parents, subsidiaries, participants and each Person acting for or on behalf of any such Lender (collectively, the "Released Parties"). The basis for such releases is not made clear, and

7

Case 4:17-bk-03351-SHG    Doc 96    Filed 04/20/17    Entered 04/20/17 19:48:07    Desc
Main Document    Page 7 of 8

the quid pro quo for each estate, with respect to each of the Released Parties, is not established. It is respectfully asserted that any and all such release provisions must be stricken by operation of any Final Order entered by the Court.

WHEREFORE, based on the foregoing, the U.S. Trustee respectfully submits that the DIP Motion as presented, should be denied, and respectfully requests that this Court grant such further relief as is just and appropriate.

RESPECTFULLY SUBMITTED this 20th day of April, 2017.

> ILENE J. LASHINSKY
> United States Trustee
> District of Arizona
>
> /s/ Larry L. Watson
> LARRY L. WATSON
> Trial Attorney